Ruffin, Chief Justice.
 

 The defendant shipped on board ¿of a vessel, belonging to the plaintiffs, and then lying at Elizabeth City, a cargo of Corn; for which the Captain signed bills of lading, expressing that .the cargo was “
 
 to be
 
 delivered to John Williams, at Charleston, in South Carolina, or to his assigns, he or they paying freight for the same.” The consignee received the cargo, and paid the freight, except the sum of one hundred dollars, and for that balance this action was brought.
 

 For the purpose oí shewing that balance to be due, the plaintiff read the depqsition of Williams, the consignee, who stated that he was the agent of the defendant, and so informed the master, when settling for the freight; and that he withheld the sum of one hundred dollars on account of the damaged state of part of the corn, and referred the master to the defendant for the final-adjustment of the difference on that point. The witness further stated “that the damage did not arise from stress of weather or the insufficiency of ¡the yessel, but from her having had a long passage, and
 
 *237
 
 from the heat of the stove in the cabin, as he, the witness, thought.”
 

 Generally a consignee by receivl freight,
 

 But it no?™,1 13 ?n1jytltl,’e'3 gen‘ of t*»« and that to “aster.
 

 The plaintiffs then offered to prove by other witnesses that the damage did arise from stress of weather, and not from the heat of the stove in the cabin. To this evidence the defendant objected, as an attempt of the plaintiff to discredit his own witness. But it was admitted by the court.
 

 The counsel for the defendant then moved for a nonsuit, because, upon the bill of lading, the consignee was primarily liable. But the court overruled the motion; and there was a verdict for. the plaintiffs, and from the judgment thereon the defendant appealed to this court.
 

 Although we are without any reported adjudication of our own upon the point before us, yet it is not new nor unsettled in those courts, in which the consideration of commercial contracts is of frequent occurence. We find that in England this stipulation in a bill of lading has a fixed construction, opposed to that contended for by the defendant.
 

 The clause
 
 “
 
 he,
 
 the
 
 consignee, paying freight,” is admitted by every one to give the master a right to retain the cargo, until the freight be paid.. But it has never been supposed, that, by the delivery before payment, the freight was forfeited, so that it could be recovered from no person. On the contrary, the freight is wages earned, and may be recovered from any person, who may have promised to pay it, or for whom the service was, in legal contemplation, performed and against whom, therefore, the law implies a promise to o
 
 • j
 
 A * pay. Generally, it may be laid down, that the consignee, by receiving the goods, becomes bound for the freight; for sides that he has the fund with which to make the payment, he is justly chargeable upon the ground that, as by the bill of lading he could demand the goods only on the condition of paying the freight, it is to be implied that he was permitted to receive them only upon his promise to pay it. To this, it seems, an exception has been admitted,
 
 Ward
 
 v. Felton, 1 East. 507, that if the consignee be only the agent of the consignor, and be known to the master to be but agent, he does not make himself debtor for the freight by accepting the consignment. If that case be law, it appears to be
 
 *238
 
 give of the present case; for Williams was the defendant’s a* &ent:> anc^
 
 anY
 
 interest in himself, and refused to pay this part of the freight; and there is no complaint that he did not. account to the defendant for the whole cargo, deducting only the freight he actually paid. But supposing the consignee to have become bound by receiving the cargo, still the question remains whether the shipper also be not liable, either under the express provisions of the charter party, or (which is our case) as the owner of the cargo. And it seems to be undoubted law at this day that he is thus liable, though formerly it was thought otherwise, and for reasons of much weight.
 

 It is obvious that, in many cases, the shipper has an interest in the freight being paid by the consignee. He may prefer the payment being made at the port ,of delivery, rather than at home, on account of the exchange. He may prefer it also for the reason, that he thereby gets so much of the proceeds of his cargo promptly out of the hands of the consignee, freed from further risk of his failure or not accounting faithfully; so that he would at least save the freight, tho’ he might lose the rest of his adventure.. Hence it might well seem that, while this clause of the contract authorised the master, for the benefit of his owner, to retain the goods until the freight was paid, it also, for the benefit of the shipper, imposed on him the obligation to do so. It is not, therefore, surprising that it should at one time have been held by an eminent Judge, Lord Kenyon, in
 
 Penrose & al. v. Wilkes,
 
 stated by Lord Eli.enbob.ough in
 
 Shepard
 
 v.
 
 De Bernales,
 
 13 East. 570, that the master delivered the goods at the peril of losing the freight, if he could not get it from the consignee. But in that opinion he was not sustained by the Court of King’s Bench, which
 
 held
 
 that the charterer was liable for freight, notwitstanding the delivery of the cargo to the consignee. That decision was followed by a similar one in
 
 Tapley
 
 v.
 
 Martins,
 
 8 Term R. 451, in the same court, and also in
 
 Christy
 
 v.
 
 Row,
 
 1 Taunt. 300, in the Common Pleas. But the whole subject was again and finally considered in the case just mentioned of
 
 Shepard
 
 v.
 
 De Bernales.
 
 It was there admitted that the question turn
 
 *239
 
 ed on this, whether this clause was introduced into the bill lading for the security of both parties, the ship owner and the merchant, or for that of the ship owner only; and it was determined that the latter was the true construction. It followed that, although the master had an option to insist on getting the freight at the port of delivery and before he parted from the goods, yet he might waive a provision, introduced exclusively for the owner’s advantage, and that, without prejudice to his recourse against the shippers. In the most commercial part of our own country, the same doctrine prevails; at least to the extent of determining this case. In
 
 Bosher
 
 v.
 
 Hoven, 17
 
 Johns. R. 237, it was held that, although the consignor is not liable for' the freight of goods, shipped on account of the consignee, yet he is liable for those owned by himself and shipped' on his own account, notwithstanding the bill of lading had the common clause, and the master delivered the goods without obtaining payment from the consignee.
 

 a party ].’e different trom what one of Ms ne^es^im ftated ^ t0 be. That is not dis-his'witness.
 

 Upon the question of evidence there is no doubt.' The objection is entirely unfounded. There was no attempt to discredit the witness. A party may prove that the fact is not as it is stated to be by one of his witnesses; for that is merely shewing a mistake, to which the best men are liable. But
 
 J °
 
 . ' . in this case the witness did not even profess to state the fact, as of his knowledge, but gave only an opinion. Then direct evidence was offered, to shew the fact to have been, in
 
 7
 
 .
 
 7
 
 reality, different from what the first witness said he thought or supposed it to have been; which is perfectly consistent with the integrity of the witness.
 

 Per. Curiam. Judgment of the Superior Court affirmed.