*State on relation of F. N. STRUDWICK, Solicitor, *v.* JOHN W. BRODNAX and others.

## Evidence—Examination of Parties.

The examinations provided for by the code, sections 332–340, are only obtainable where the testimony sought is that of a person immediately interested in the action.

*Semble,* that the provisions of section 336 of the code were not intended to abrogate the common law rule which forbids one to impeach the veracity of his own witness, but only to allow evidence that the facts were otherwise than as testified by such witness.

(*Collier* v. *Jeffreys,* 2 Hay., 400; *Hice* v. *Cox,* 12 Ired., 315; *Spencer* v. *White,* 1 Ired., 236; *Shelton* v. *Hampton,* 6 Ired., 216; *Wilson* v. *Derr,* 69 N. C., 137; *Neil* v. *Childs,* 10 Ired., 195, cited and approved.)

MOTION by defendants in the cause for an order to take the deposition of a witness and for leave to rebut the evidence, heard at Fall Term, 1879, of ROCKINGHAM Superior Court, before *McKoy, J.*

The motion was denied and the defendants appealed.

*Mr. Thomas Ruffin,* for plaintiff.
*Messrs. Mebane & Scott,* for defendants.

SMITH, C. J. This action on the guardian bond against the defendants, the principal obligor, and the representatives of the deceased surety, seeks to enforce an account and settlement of the trust estate in the hands of the former, and is under a reference to the clerk of the superior court of Rockingham county, wherein the cause is depending. The defendant, John W. Brodnax, the removed guardian, files an affidavit setting out an arrangement entered into between himself and the widow of the testator, from whom the ward's property is derived, whereby the use and profits

---

* Dillard, J., having been of counsel did not sit on the hearing of this case.

26

of the land were to be appropriated to the discharge of the testator's debts in exoneration of its liability therefor, and that much of the trust fund with which he is charged has been applied to that object and expended in the support of the infant, who continued to reside with his mother, in consequence of which an adjustment of their mutual accounts and dealings is necessary before his administration of the ward's estate can be settled and his relations to it correctly ascertained. On this evidence his counsel moves the court for an order to take the examination of Mary L. Brodnax the mother, alleged to be temporarily resident of Danville, in Virginia, in order that, as he avers, he may establish his credits by her testimony and have "an opportunity of legally contradicting her testimony, if adverse to him, by her own verbal and written declarations and admissions" previously made.

An interpretation of those provisions of the code of civil procedure (that relate to and authorize such examinations, sections 332 to 340 inclusive) which permit a party to take and use the evidence and then directly impeach the source from which it comes, certainly introduces a novel feature in the law and practice, and subverts a long and well settled rule in the conduct of civil suits, that one who offers and examines a witness shall not be heard to impeach his character for veracity, or in the words of PEARSON, J., "to say that he attempted to impose on the jury by calling a witness whose general character is known to be bad." The rule does not prevail in criminal prosecutions, and the state may offer such impeaching evidence, as was held in *Collier* v. *Jeffreys*, 2 Hay., 400.

But the principle does not exclude in either class of cases, proof of facts different from those testified by the witness. A party is not precluded by the statement of one of his witnesses from showing by others the facts to be different, but he is not at liberty directly to assail his reputation for truth

and thus destroy his credit before the triers. The doctrine and the ground on which it rests are clearly defined and explained in *Hice* v. *Cox*, 12 Ired., 315, and in cases preceding it. *Spencer* v. *White*, 1 Ired., 236; *Shelton* v. *Hampton*, 6 Ired., 216, and *Wilson* v. *Derr*, 69 N. C., 137.

Is the rule abrogated or modified when the examination is had under section 336? The chapter in which these sections are found, abolishes separate and independent proceedings for the discovery of evidence under the usages obtaining in the former courts of equity, and substitutes a more direct and summary method of procedure, incident to the action itself, for taking and preserving the needed testimony. Parties and interested persons are made competent to testify on the trial, except in cases specified in section 343, which removes the disability, and in the amendatory act of March 11th, 1879, acts 1879, ch. 183. The examination taken preliminarily, as proposed by the defendant, can only be of parties to the action and of persons for whose immediate benefit the action is prosecuted or defended," (C. C. P., §§ 333, 339,) and differs somewhat from an ordinary deposition.

1. It is taken only before a judge or clerk of the court wherein the cause is depending and therefore at a place within their jurisdiction to act. § 334.

2. The witness is not compelled to attend in any other county than that of his residence or in which he may be summoned.

3. The evidence may be used on the trial by either party. § 335.

4. It is open to rebuttal, and the examining party may treat it as proceeding from an adverse witness. § 336.

Still it falls under the general rule that forbids the party who takes and introduces the examination, as evidence on his own behalf, from discrediting the witness himself except as that result may be incidental to proof of a different state

of facts. By calling his adversary, a party makes him so far his own witness that he cannot impeach or disparage his general credibility. 2 Whit. Prac., 279.

"Having called the plaintiff to testify," remarks STRONG, J., speaking for the court in *Packard* v. *Collins*, 23 Barb., 444, " he (the defendant) thereby represents him as deserving of credit, and is concluded from denying it by introducing evidence for the purpose of impeaching him, showing either that his general character for truth is bad or that he has made previous contradictory statements; but he may by any pertinent evidence prove a fact to be otherwise than as testified to by the plaintiff."

There is nothing in an examination taken under these special provisions, when exhibited to distinguish it in legal effect from other testimony produced, or exempt it from the operation of those rules which govern the introduction and determine the admissibility of all evidence.

Depositions taken in the ordinary way by a party and filed may be read by the other party. *Collier* v. *Jeffreys*, 2 Hay., 400. Nor does the taking the deposition make him the witness of the party taking it. This is so held in *Neil* v. *Childs*, 10 Ired., 195, wherein PEARSON, J., thus declares the rule: "If the witness" (whose deposition had been taken by the plaintiff and used by the defendant at the trial) " had been called and examined, or if his deposition had been read by the plaintiff, the exception" (to the plaintiff's proving the hostile feelings of the witness towards himself and the witness' conflicting statements, offered to impeach him) " would have raised the question whether a party can impeach his own witness, in whose testimony he is disappointed, by showing that he had on other occasions stated differently," and adds, " the question does not arise in this case for a *party does not make one his witness by taking his deposition which he declines to read,* or by having a witness subpœnaed and then declining to examine him."

We should hesitate to ascribe to the rebuttal "by adverse testimony," authorized by section 336, which is defined by Worcester "a driving or beating back; a repelling or opposing by argument or evidence," an effect so sweeping as to break down a principle so long and thoroughly established and acted on in judicial practice, without some more clear and distinct manifestation of the legislative will than is furnished by the word employed to express it.

But the legal effect of the examination and its exposure to attack, if not acceptable to the defendant, are questions not now before us and it is not necessary to anticipate their solution. The court refused the motion (and indeed no order is required to obtain the preliminary examination under section 334, either in terms or upon the construction given to it by the courts of New York; Voorhies' Code, page 748, and cases cited; 2 Whit. Prac., 275,) for reasons in our opinion fully sustaining the denial, to-wit.: that the witness had no such interest in the result of the action as is contemplated in section 339, and the testimony taken in the form of a deposition would accomplish every useful purpose as well as the proposed examination. We are unable to see how the existence of unsettled accounts between the witness and the defendant tends in any degree to show that the action is prosecuted for her immediate or even indirect benefit, and unless this does appear, the proposition is without the sanction of the statute.

The argument deduced from the usages of a court of equity and pressed upon our attention with the fruits of a laborious research into the subject, properly understood do not contravene, and if they do, must be controlled by the provisions in the code for a supervening remedy to take the place of the former system. The substitute is simple and complete, and provides adequately for all cases where the needed evidence is attainable without the delays and embarrassing incidents attaching to a bill of discovery in aid

of an action at law. The new system, discarding the cumbrous forms of the old, seeks to secure the same objects by a more plain, direct and equally efficacious proceeding.

So then upon the facts contained in the affidavit of the defendant, it is not a case entitling him to take the examination of the absent witness-for the purposes specified, and in the mode prescribed in the code; and if he was so entitled, his right is not prejudiced by the refusal of the order. It must therefore be declared there is no error in the ruling of the court and the judgment is affirmed. This will be certified that the cause may proceed in the court below.

PER CURIAM. No error.