### STATE v. WINDAL TAYLOR.

*Witnesses, examination of.*

A party cannot contradict his own witness; where the state called and examined a witness, who was afterwards put upon the stand and examined by the defendant, *it was held* inadmissible for the state on cross-examination to discredit him.

(*State* v. *Norris,* 1 Hay., 495, overruled, and *Sawrey* v. *Murrell,* 2 Hay., 597, approved).

INDICTMENT for larceny tried at Spring Term, 1882, of LENOIR Superior Court, before *Gilmer, J.*

The defendant was charged with stealing a horse, the property of one Barfield.

The evidence on the part of the state tended to show that a cart and horse, the property of the prosecutor, were stolen on the night of the 14th of December, 1880, and the cart (one wheel of which made a peculiar track) was tracked from Lenoir county, some twenty-five miles, to Wilcox's Mill, in the county of Jones. The tracks were last seen near a bridge at that place. One of the

witnesses for the state testified that on the next night, by the light of the moon, which was shining very brightly, he saw the defendant riding the horse of the prosecutor near the bridge. He was riding in a walk when he first saw him, but from the appearance of the horse's tracks he seemed to have been put in a rapid run near the bridge. Both the defendant and the horse were well known to the witness.

With the view of corroborating this witness, the state introduced one Robert Harper, and offered to show by him that on the night of the 14th of December, on which the horse was stolen, he and one Sparrow were on their way to Goldsboro, and that between eleven and one o'clock he met three persons and a horse and cart; that one was on the horse's back and the other two were in the cart, riding on sacks filled with something; that he did not know any of the three, but after they passed a minute or two he took one of the parties to be the defendant; that he knew the defendant was in the habit of wearing a broad-brim hat; that he thought of the hat the defendant was in the habit of wearing after they had passed him, and that was the only thing which caused him to think of the defendant, and that he did not notice the shape of the man.

The state also offered testimony to show that the prosecutor's cart was found in the woods about three hundred yards from the point in the road where the tracks were lost, and when found had been taken to pieces—the body in one place, the wheels in another, and the axletree hidden under a tree in another place; and near the same place were found papers torn and thrown on the ground that appeared to be wrappers of packages of soda and starch.

The state then offered to show by one Quin, that, on the same night the horse was stolen, he lost, by theft, from his store, which was in the same neighborhood in which the prosecutor resided and had been broken into, soda and starch, which were wrapped in paper corresponding with the description of the packages found near the missing cart.

The defendant, in his behalf, introduced the said Harper, who had been examined by the state, who testified to a conversation which he stated he had with said Quin about the identification of the horse, which Quin had testified had not occurred. The state, on the cross-examination of this witness, exhibited to him his written examination taken by the justice of the peace, and proposed to ask the witness if he did not swear therein that he took one of the persons he met in the cart, as aforesaid, to be the defendant *by his shape and his looks*. This was objected to, but allowed. The witness swore that he made no such statement, and the state in reply offered to show by the justice of the peace that the witness, Harper, signed the said statement as produced, and that the same was read over to him, and that said Harper, on such examination before him, did swear that he took the person in the cart to be the defendant *by his shape and his looks*, as recorded in said statement, and those were his very words. The defendant objected to this evidence. It was admitted by the court, and the defendant excepted. There was a verdict of guilty, and judgment against the defendant, from which he appealed.

*Attorney-General,* for the State.
*Messrs. Strong & Smedes,* for defendant.

ASHE, J. Several exceptions were taken to evidence by the defendant, in the course of the trial, but we deem it unnecessary to consider any of them, except that taken to the evidence of the justice, which was offered, as we understand, to discredit the testimony of the witness Harper.

From the statement of the case, it seems the witness Quin, in his examination, had been asked if he had not had a certain conversation with the witness Robert Harper, in regard to the identification of the stolen horse, and he denied that such a conversation had occurred. Harper was then recalled by the defendant, and testified that such a conversation did occur. The state then, on cross-examination, asked Harper if he had not sworn

on the examination before the justice, that he took one of the persons in the cart to be the defendant *by his shape and his looks.* This the witness denied, and the court allowed the state to produce evidence to contradict him, and show that he had made that statement upon oath.

We can see no ground for the admission of this evidence, except for the purpose of discrediting the witness Harper. He had been introduced and examined by the state, as its witness, and the question is presented, can the state thus discredit its own witness?

The principal case relied on by the state for such a practice is that of the *State* v. *Norris,* 1 Hay., 495, where it was held that it might be done, but in the note to that case Judge Battle says it is not law, and cites the case of *Sawrey* v. *Murrell,* 2 Hay., 597, where the contrary doctrine is announced, and the decision in that case, we think, is supported by the authorities.

Mr. GREENLEAF (Vol. 1, § 442) says, "when a party offers a witness in proof of his cause, he thereby in general represents him as worthy of belief. He is presumed to know the character of the witnesses he adduces, and having thus presented them to the court, the law will not permit the party afterwards to impeach their general reputation for truth, or to impugn their credibility by general evidence tending to show them unworthy of belief"; and in same volume, section 444, Mr. REDFIELD, the editor, says: "The question is extensively discussed in the case of *Melhirst* v. *Collier,* 15, Q. B., 878, both by counsel and by different members of the court, and the conclusion arrived at is, that you may cross-examine your own witness if he testify contrary to what you have a right to expect, as to what he had stated in regard to the matter on former occasions, either in court or otherwise, and thus refresh the memory of the witness and give him full opportunity to set the matter right, if he will, and at all events to set yourself right before the jury. But you cannot do this for the mere purpose of discrediting the witness; nor can you be allowed to prove the contradictory statements of

88

the witness on other occasions, but must be restricted to proving the facts by other evidence. The same rule prevails in the courts of admiralty, and this seems to us to be placing the matter upon its true basis."

In England, it required a statute (17 and 18 Victoria, ch. 125) to allow a party to an action to contradict his own witness, by showing a statement made by him in direct contradiction to his evidence.

In Massachusetts, it has been held that a witness, who has testified in chief that he did not know a certain fact, cannot be asked by the party calling him, whether he had not on a former occasion sworn to his knowledge of the fact, as the object of the question could only be to "*disparage the witness*" and show him unworthy of credit with the jury, which was inadmissible. *Commonwealth* v. *Welch*, 4 Gray, 535.

Concluding, as we have, that the testimony of the justice was offered in this case for the sole purpose of discrediting the witness, Harper, we are of the opinion, induced by the authorities cited, that the exception of the defendant was well taken.

There is error. This will be certified to the superior court of Lenoir, that a *venire de novo* may be awarded.

Error.                                                  *Venire de novo.*