### STATE v. FLEET MELVIN.

(Filed .19 October, 1927.)

**Evidence—Declarations—Contradiction—Instructions—Appeal and Error —New Trials—Criminal Law—Homicide.**

> Declarations of a witness made to another as to the facts in a criminal action for a homicide, are not admissible by the testimony of the one to whom they were made, unless the declarant's evidence or character has been in some way impeached on the stand, and then only to the extent they are not contradictory, and where contradictory as well as confirmatory evidence has been admitted by the trial judge upon exception of defendant, an instruction to the effect that the evidence should be considered only to the extent it corroborated the declarant's testimony, is reversible error.

CRIMINAL ACTION before *Sinclair, J.,* at May Term, 1927, of SAMPSON.

The defendant was charged with the murder of Pauline Owens, and was convicted of murder in the first degree. Sentence of death was imposed, and the defendant appealed.

The evidence tended to show that the defendant, a negro boy about 17 years old, had been going with the deceased, Pauline Owens, and that on the night of the homicide the deceased and another girl, named Mary Bradley, were going to a show; that the defendant was standing on the street when the deceased passed "and he told her not to go by him with her little head hoisted up." She told him to go on. Thereafter the deceased upbraided the defendant for "watching her," and the deceased said: "Fleet, you don't have anything to do but watch me. You can just let me alone and stop going with me." The defendant then "grabbed her, and she told him to turn her loose, and he threw her down on the ground. The deceased was killed almost instantly by a knife stab to the heart. Some of her fingers were almost severed."

The defendant contended that the killing was accidental; that he and the deceased were playing with the knife, and in struggling over it the deceased was cut.

*Attorney-General Brummitt and Assistant Attorney-General Nash for the State.*

*E. C. Robinson and Butler & Herring for defendant.*

BROGDEN, J. Mary Bradley, a witness for the State, and the only eye witness to the killing, testified in part: "I did not see the defendant open his knife. I did not see the knife he had that night; he had her by the arm on the right side and was bending her back, but was not saying anything, and she was saying: 'Go on Fleet and let me alone,' and was crying. . . . They were holding hands after we crossed sidewalk; they came up holding hands. We all three were walking together on the sidewalk, and I was on Pauline's side; he was still holding her hand. I did not see the defendant open his knife; I didn't hear her say she was cut."

Dr. J. S. Brewer, another State's witness, was permitted to testify that Mary Bradley told him that she and the deceased had started to the show, and as they started down the street Fleet came out, and that he and Pauline had some conversation about "watching her," . . . and as they were crossing the street Fleet called to them, and Mary told her not to have anything to do with him, and to go on, . . . and as they came on to Dr. Brewer's house the argument seemed to get high, and that "Fleet jerked Pauline in the street and commenced jerking her and striking her, and that presently he got his knife and then she started away and heard Pauline call to her, and looking around Fleet had Pauline down on the ground next to my hedge, and just as she looked around Fleet got up and ran."

The defendant objected to the testimony of Dr. Brewer and moved to strike it out. Motion was overruled and defendant excepted.

The Solicitor stated to the court that the statement of Dr. Brewer that Mary Bradley told him "if he had come up a few minutes before he would have probably seen Fleet running," was not corroborative of the statement made by Mary Bradley, and asked that it be stricken out. This was done. The trial judge then stated to the jury that the evidence of Dr. Brewer was offered "only for the purpose of corroborating Mary Bradley. You will only consider that part of his evidence which you find tends to corroborate Mary Bradley, if you find any of it does, and you are not to consider any part of it that does not corroborate her."

A comparison of the testimony of the State's witnesses, Mary Brad-· ley and Dr. Brewer, will disclose the following variations:

1. Mary Bradley did not say "the argument seemed to get high."

2. Mary Bradley did not say, "Fleet jerked Pauline in the street and commenced jerking her and striking her, and presently he got his knife."

This testimony of Dr. Brewer, therefore, contradicts the testimony of Mary Bradley, another State's witness, in material particulars which, if believed, totally destroyed the theory of the defendant that the cutting was accidentally done.

It has been the law from ancient times that the State could not impeach or discredit its own witness. It was first held in *S. v. Norris,* 2 N. C., 429, that in criminal actions the State could discredit its own witness, but in a note to that case *Battle, J.,* says it is not the law and calls attention to *Sawrey v. Murrell,* 2 Haywood, 397. The *Norris case* was expressly overruled in *S. v. Taylor,* 88 N. C., 694, in which the following utterance of Greenleaf, Vol. 1, sec. 442, was approved: "When a party offers a witness in proof of his cause, he thereby in general represents him as worthy of belief. He is presumed to know the character of the witnesses he adduces, and having thus presented them to the court, the law will not permit the party afterwards to impeach their general reputation for truth, or to impugn their credibility by general evidence tending to show them unworthy of belief."

But it is contended that, although the evidence was contradictory, it was admitted only as corroborative of the testimony of Mary Bradley. The question then is, when may corroborative testimony be offered? *Reade, J.,* in *S. v. Parish,* 79 N. C., 610, states the rule thus: "The rule is, that when the witness is impeached—observe, when the *witness* is impeached—it is competent to support the *witness* by proving consistent statements at other times, just as a witness is supported by proving his character, but it must not be considered as substantive evidence of the truth of the *facts* any more than any other hearsay evidence. The fact that supporting a witness who testifies, does indirectly support the facts to which he testifies, does not alter the case. That is incidental. He is supported not by putting a prop under him, but by removing a burden from him, if any has been put upon him. How far proving consistent statements will do that must depend upon the circumstances of the case. It may amount to much or very little." The rule was further extended in *S. v. Maultsby,* 130 N. C., 664: "It was competent to corroborate the witness, whose credibility had been attacked by the course of the cross-examination, to show by his own testimony that soon after the occurrence and before this proceeding began

he had made similar statements to his testimony on the stand." Again, in *S. v. Exum,* 138 N. C., 599, *Hoke, J.,* declares: "The courts of this country are not in accord as to the admission of this character of evidence—previous consistent statements to corroborate a witness who testified at a trial. Some of them reject such evidence altogether as unsound in principle and dangerous in practice. Some of those that admit the evidence have placed restrictions upon it, which we think go rather to its force than its competency; and the decisions of our own State have gone some further perhaps than the others in its admission. All the courts admitting such evidence are agreed that it is only competent as affecting the credibility of the witness, and is never used as substantive or independent supporting testimony; and further, that it is never admitted until the witness has been in some way impeached." Quoting from *Jones v. Jones,* 80 N. C., 246, the opinion proceeds: "The admissibility of previous correspondent accounts of the same transaction to confirm the testimony of an assailed witness, delivered on the trial, rests upon the obvious principle that as conflicting statements impair, so uniform and consistent statements sustain and strengthen his credit before the jury."

In *S. v. Bethea,* 186 N. C., 22, *Adams, J.,* said: "This Court has often held that whenever a witness has given evidence in a trial and his credibility is impugned, whether by proof of bad character or by his contradictory statements or by testimony contradicting him or by cross-examination tending to impeach his veracity or memory or by his relationship to the cause or to the party for whom he testified, it is permissible to corroborate and support his credibility by evidence tending to restore confidence in his veracity and in the truthfulness of his testimony. Such corroborating evidence may include previous statements, whether near or remote, and whether made pending the controversy or *ante litem motam.*"

It therefore appears from the decisions that the admissibility of previous statements made by a witness, as corroborating evidence, depends upon whether the witness has been impeached or his credibility impaired for any reason or on any account. In the event of impairment of credibility, previous similar statements are admissible, but the rule has never been expanded far enough to permit the introduction of previous contradictory statements, because in the very nature of things this would weaken credibility rather than strengthen or confirm it. In *S. v. Lassiter,* 191 N. C., 210, the Court says: "In no aspect of the law of evidence can contradictory evidence be used as corroborating, strengthening or confirming evidence."

Applying these principles to the present record, it is apparent that the narrative of Dr. Brewer, in the particulars mentioned, was not a narrative "of previous similar declarations" made by Mary Bradley, but rather of previous dissimilar and contradictory statements made by Mary Bradley as to how the killing occurred. This is not permitted under the rules of law applicable to the trial of criminal causes, and the defendant's exceptions are sustained.

New trial.