### BRYAN CLAY v. E. E. CONNOR and ELVA CONNOR.

(Filed 22 January, 1930.)

**Evidence D f—Testimony as to statement made by witness inconsistent with his testimony is competent for purpose of impeachment.**

In impeaching a witness, testimony as to previous statements he had made material and relevant to his cause of action which were inconsistent with his testimony on the stand, is competent as tending to weaken his credibility, and the exclusion of such testimony by the trial court entitles the defendant to a new trial.

APPEAL by defendants from *Sinclair, J.,* and a jury, at August Special Term, 1929, of BUNCOMBE. New trial.

Plaintiff contends that the defendants agreed to sell him a house and lot and fourteen shares of stock in the Fairview Gravity Water Company for the sum of $1,800. They made him a deed for the house and lot and delivered possession to him and he thereafter enjoyed the privileges which accrued to him as the purchaser of the water stock for a

period of five years, and was never called upon by the Fairview Gravity Water Company for any water rents, it being in evidence that the owner of as many. as fourteen shares in the Fairview Gravity Water Company had the privilege of using water from said company without paying any water rents, and only those who did own so much stock thereof were so privileged or allowed to connect to said Fairview Gravity Water Company. The defendants did not deliver the shares of stock in the Water Company to plaintiff, although he enjoyed the full use of the water rights, and this suit was for the recovery of the shares of stock, or their value, it being in evidence that the shares have in the meantime been sold to somebody else.

Plaintiff's prayer for judgment was as follows:

"1. That he have and recover a decree of this court ordering and directing the said defendants to endorse and deliver to the plaintiff the said stock in the Fairview Gravity Water Company.

2. That the plaintiff have and recover of the defendants, and each of them, judgment in the sum of $350, for the breach of said contract, and interest thereon from 20 July, 1921.

3. That the deed conveying said premises to the plaintiff be reformed and made to show the total consideration therefor, as hereinbefore alleged.

4. For the costs of this action to be taxed by the clerk.

5. For all other and further relief to which the plaintiff may be entitled in law and equity."

Defendants denied that they agreed to sell the fourteen shares of stock in the Fairview Gravity Water Company, but sold only the house and lot.

The issues submitted to the jury, and their answers thereto, were as follows:

"1. Was the free use of the water rights by the plaintiff as a stockholder in the Fairview Gravity Water Company an appurtenance belonging to the land described in the complaint? Answer: Yes.

2. In what amount, if any, has the plaintiff been damaged by the refusal of the defendant to transfer and deliver to the plaintiff their fourteen shares of stock in said water company? Answer: $350 without interest."

Judgment was rendered by the court below on the verdict. Defendants made numerous exceptions and assignments of error .and appealed to the Supreme Court.

The material facts will be set forth in the opinion.

*Ellis C. Jones for plaintiff.*
*Wells, Blackstock & Taylor for defendants.*

CLARKSON, J. The plaintiff introduced evidence to the effect that he purchased the house and lot for $1,800, "with all the appurtenances thereunto belonging or in anywise appertaining." .That he purchased with the house and lot the fourteen shares of stock valued at $350, in the water company, and defendants failed and refused to deliver same. The defendants denied that they sold the stock.

The defendant, E. E. Connor, testified as follows: "In June, 1922, I went out to Fairview and had a conversation with Mr. Clay, and offered to sell him my stock for one-half of what I originally offered. I had originally offered it for $350. He asked me to give him ten days to consider. I told him I had not come out with such a proposition, but if he wanted ten days I would give it to him." This evidence was objected to by plaintiff, and the court below sustained the objection, and defendants excepted and assigned error. The court below should have admitted the testimony.

J. E. Shuford, a witness for defendants, testified: "I was present with Mr. Connor some time in 1922, when he had a conversation with Mr. Clay at Fairview concerning the stock. Q. After that, after the conversation with Mr. Connor and Mr. Clay, when you were present, did you have another conversation with Mr. Clay in regard to this stock of the Fairview Gravity Company? A. I asked Mr. Clay after this conversation between him and Mr. Connor that I was witness to, I said 'Why don't you buy that stock?' He said he didn't buy the stock; that his deed for the house and lot included all appurtenances thereto and that gave him the right to the water stock; that was all the statement I heard Mr. Clay make." This evidence was objected to by plaintiff, and the court below sustained the objection and defendants excepted and assigned error. The court below should have admitted the testimony. The evidence was material as bearing on the contract alleged on one side and denied on the other: Was the stock sold with the house and lot? A deed carrying an easement as to water rights, see *Blankenship v. Dowtin*, 191 N. C., 790.

The court below, recognizing the controversy waged over a contract, charged the jury correctly as to what was a contract: "A contract, gentlemen of the jury, is said to be the meeting of two minds. The minds must come together and understand and agree upon each and every detail of the contract before it is considered a contract. If there is some detail or condition which one party understands and the other does not, that is not a contract; both minds must meet and understand and agree upon each and every detail." This definition does not mean immaterial details. This evidence was introduced by defendants for the purpose of impeaching plaintiff's testimony, and we think the exclusion prejudicial to the defendants.

Speaking to the subject, we find in Wigmore on Evidence, Vol. 2, 2d ed., part sec. 1040, p. 491-2, the following: "In the present mode of impeachment, there must be of course a *real inconsistency* between the two assertions of the witness. The purpose is to induce the tribunal to discard the one statement because the witness has also made another statement which cannot at the same time be true. . . . Thus, it is not a mere difference of statement that suffices; nor yet is an absolute oppositeness essential; it is an inconsistency that is required. Such is the possible variety of statement that it is often difficult to determine whether this inconsistency exists. But it must appear 'prima facie' before the impeaching declaration can be introduced. As a general principle, it is to be understood that this inconsistency is to be determined, not by individual words or phrases alone, but by the *whole impression or effect* of what has been said or done. On a comparison of the two utterances, are they in effect inconsistent? Do the two expressions appear to have been produced by inconsistent beliefs? *Clifford, J.,* in *U. S. v. Holmes,* 1 Cliff., 116: 'Directness, in the technical sense, is not necessary to give the evidence that character, nor is it necessary that the contradiction should be complete and entire, in order to admit the opposing testimony. Circumstances may be offered to rebut the most positive statement, and it is only necessary that the testimony offered should have a tendency to explain, repel, counteract, or disprove the opposite statement in order to render it admissible.' "

"There are also three other modes of impeaching the credit of a witness: (1) By disproving his statements, made in court, by the testimony of other witnesses; (2) By proving statements of the witness made out of court, inconsistent with or contradicting those made by him on the witness-stand," etc. Jones on Evidence, 2d ed., sec. 844, p. 1074.

It is well settled that it is competent to show previous inconsistent statements made by witnesses to weaken their credibility and consistent statements to strengthen their credibility. Ordinarily a party may not impeach his own witness, but may show a different state of facts by another witness.

The issues upon another trial should be reformed. For the reasons given, there must be a

New trial.