## A. B. ROSS v. WESTERN UNION TELEGRAPH COMPANY.

(Filed 19 March, 1941.)

**1. Master and Servant § 21b—**

The doctrine of *respondeat superior* applies only when the relationship of master and servant exists between a wrongdoer and the person sought to be charged at the time of, and in respect to, the very transaction out of which the injury arose.

**2. Evidence § 17—**

While a party will not be allowed to impeach the character of his own witness, he may show the facts to be otherwise than as testified to by his witness.

**3. Automobiles § 24b—Evidence held to show that employee was not acting within course of employment at time of injury.**

Evidence tending to show that a messenger boy employed by defendant telegraph company customarily delivered telegrams by bicycle, that on occasion, with the permission of the defendant's manager, he used his car to deliver out-of-town telegrams, in which instance the sender or receiver, and not the defendant, paid the charges, and that the accident in suit occurred while the messenger was traveling from his home to a garage to have repairs made on his car at his own expense, in the morning before reporting for work, *is held* insufficient to be submitted to the jury on the issue of *respondeat superior*.

APPEAL by plaintiff from *Olive, Special Judge,* at Special August Term, 1940, of HENDERSON. Affirmed.

This is an action of actionable negligence, brought by plaintiff against defendant alleging damage. At the close of plaintiff's evidence, the defendant in the court below made a motion for judgment as in case of nonsuit. C. S., 567. The court below sustained the motion. The plaintiff excepted, assigned error, and appealed to the Supreme Court.

*M. F. Toms and A. J. Redden for plaintiff.*
*Adams & Adams for defendant.*

CLARKSON, J. We think the judgment of nonsuit rendered in the court below correct. The evidence of plaintiff was to the effect that on 5 September, 1938, about nine, or before, in the morning, he was injured by one Grady Deaton, who was driving a Ford car, and who negligently and carelessly ran into him, striking his leg and foot and causing serious injury.

The action is not brought against Grady Deaton, but against the Western Union Telegraph Company. The record shows that Grady

Deaton was working for the defendant as a messenger boy, with cap and clothes *indicia* of his employment. His automobile was frequently used, with defendant's knowledge and consent, for delivering out-of-town telegrams.

The sole question for determination is: Was Grady Deaton about his master's business or in the course of his employment when he injured plaintiff? We think not. He was about his own private business. The plaintiff and defendant subpœnaed Grady Deaton and plaintiff made him a witness. Deaton testified, in part:

"On September 5th, 1938, I owned a Thirty-three Model Ford V8. That was the same car I drove into the Thomas Buick Motor Company. That was the same car Mr. Ross was injured by. I have delivered messages in that car. I don't know how many times. I would say around 10 or 15 or 20 times. The manager had me go on long trips and deliver messages once or twice. I delivered those messages as he requested me to. I have not worked for the Western Union for a week and a half. I was working there on the 5th day of September, 1938, and prior thereto. I was subpœnaed here by the Western Union. (Cross-examination.) I live here in Hendersonville. I have lived here about eight years, I did work for the Western Union about 1937 as a messenger boy and I was working as a bicycle messenger boy on the 5th day of September, 1938, and was working for them on the day Mr. Ross was hurt. At that time I was living on the Tracey Grove Road. It is east on the Chimney Rock road. I was living about three miles from town. I owned a car at that time. It was a Model 33 black Ford V8 Sedan, a five passenger car. It had a black metal top, and the *Western Union had no interest in the car.* I bought it in Asheville at the Parkland Chevrolet Company. *The Western Union Company did not pay any part of the repair bills.* My regular job was delivering telegrams *in town by bicycle.* I would come in the morning in my *automobile and would leave it before I went to work. And then would go riding my bicycle.* This bicycle was used in the free delivery zone. That was for telegrams in town, in Hendersonville, and then for delivering telegrams out in the country from time to time I used my automobile, with permission from the manager for the trip. Sometimes the one to whom it was sent would pay the charges; sometimes it would be guaranteed by the sender. It was either by the sender or the receiver. I was under no obligation to take these telegrams out in the country. The Western Union did not pay any part of the cost. The trip was paid for by the sender or the receiver. *The larger part of my work was done on bicycle,* and when the Manager turned over telegrams not to be delivered in the city I delivered them in the country. On the 4th day of September, 1938, I went in my car to Tracy's here in Hendersonville. It is on the corner

of 7th and Main. It is a restaurant right across Main Street from the Thomas Motor Company. I parked my automobile there in front of Tracy's and a fellow backed his car off the parking lot and bent my door and fender in. *I later took my car into a garage for repairs.* I discussed repainting it with other people on the 4th. I went down to see Mr. Dixon about having it fixed. I did not leave the car there that night. I drove it home and brought it in the next morning. That was by arrangement with Mr. Dixon. I brought it from my home on the Tracey Grove road. I left my home that morning about eight o'clock. *I did not go to the Western Union office at all before going to the Thomas Motor Company.* I did not go by or near the Western Union office in going from my home to the Thomas Buick Company. The Tracey Grove Road is east from here. You drive from the Tracey Grove Road into the Chimney Rock Road, and I came from the East down to Thomas Motor Company on 7th and Main. I did not stop anywhere or go out of my way. *My purpose in going to the Thomas Buick Company was to have some repairs made on the car,* for the injuries Tracy had caused. I went into the main street entrance. I saw Mr. Dixon in the garage. They wanted the car brought around to the back and so I took it to the back entrance. There is an entrance on the front and one on the back. One is on 7th Avenue. After I got into Main Street entrance, I pulled around to the inside door. I looked back and did not see anyone and *I pulled out to the sidewalk and looked again and did not see anyone and I started back and then I saw Mr. Ross standing up against the wall near the grease rack.* (Indicating on diagram.) I came around on 7th Avenue and went in on a curve. I don't remember whether I went right straight or not. I saw Mr. Ross leaning up against the wall and that was about 10 feet from where my car was when I came out. My car had not been closer to the wall than that at anytime. I was ten feet from the wall at all times. Then I backed my car into Main Street and pulled around into 7th Avenue. I did not have any conversation with Mr. Ross, at that time. I did not ask Mr. Ross if he was hurt. I did not say anything to him, and he did not say anything to me. *I did not know anything was wrong with him. I did not hear anything about it until I got to the Western Union office.* I went into the 7th Avenue entrance to see about the repairs. *No part of the cost of the repairs were charged to the Western Union Company. I paid the bill.* They said it would probably take all day. I was to get it that night after work. I went from there to Mr. Tracy's to get my breakfast. *The best I remember I got to the Western Union office at about ten minutes of nine, or five minutes of nine.* I had not been around the office before that, that morning. I had not delivered any telegrams and had not done any work for the telegraph company. I did not deliver any tele-

grams that morning. *I started work that morning at nine o'clock.* After I left my car at Thomas Buick Company it was my time to go to work. That is right. At that time and before that I had received a messenger boy's uniform. It did not belong to me. It belonged to the Western Union. The office in Hendersonville does not have a regular dressing room, and sometimes I would wear my uniform home or part of it, and then wear it back the next morning. And sometimes I would not. I could not say whether I had on my uniform the morning I left my car at the garage. *I did not have any telegrams while I was at the Thomas Motor Company, before I got to the Western Union Office, for delivery that morning.* When we had uniforms we wore them always while on duty. When telegrams were delivered out of the free zone, either the sender or receiver would pay for the messages."

The exceptions and assignments of error as to questions asked certain witnesses, which were excluded by the court below, cannot be sustained; they were not germane to the controversy.

The doctrine of *respondeat superior* applies only when the relation of master and servant is shown to exist between a wrongdoer and person sought to be charged for result of wrong at time and in respect to the very transaction out of which injury arose. *Van Landingham v. Sewing Machine Co.,* 207 N. C., 355.

While a party will not be allowed to impeach the character of his own witness, he may show the facts to be otherwise than as testified by his witness. *S. v. Cohoon,* 206 N. C., 388.

In the present action there is no sufficient competent evidence to show that Deaton was acting within the scope of his employment and about his master's business when the injury to plaintiff took place. Deaton's testimony as a witness for plaintiff showed he was not acting within the scope of his employment and about his master's business when plaintiff was injured.

For the reasons given, the judgment of the court below is

Affirmed.