STATE *v.* TILLEY.

The judgment entered in the court below is

Affirmed.

---

STATE v. EDWARD L. TILLEY, R. A. BOWMAN, D. W. SNOW, O. W. CRANDELL AND EVERETTE H. MABE.

(Filed 15 January, 1954.)

**1. Criminal Law § 52a (2)——**

The unsupported testimony of an accomplice is sufficient to sustain a conviction if it satisfies the jury beyond a reasonable doubt of the guilt of the accused.

**2. Larceny § 1——**

The possession of the custodian of a company's warehouse is in contemplation of law the possession of the company, and therefore the felonious asportation of the goods from the warehouse with the connivance and aid of the custodian constitutes larceny.

**3. Criminal Law § 42f: Evidence § 17——**

A party cannot impeach his own witness either in a civil or in a criminal case.

**4. Same——**

A party makes a witness his own within the rule forbidding impeachment by putting him on the stand and examining him as a witness at the trial of the cause.

**5. Same——**

Since a party calling and examining a witness represents him to be worthy of belief he may not impeach the credibility of such witness even

though the witness be the adverse party. This rule is not invoked merely by the subpoenaing or causing a witness to be sworn or by taking a deposition unless the deposition or part of it is offered in evidence. This rule does not apply where the calling of the witness is required by law, such as attesting or subscribing witnesses to an instrument, and in the examination of a judgment debtor by the judgment creditor to disclose assets.

**6. Same—**

The rule that a party cannot impeach his own witness precludes him from showing that the general character of the witness is bad or that the witness had made statements at other times inconsistent with or contradictory to his testimony at the trial. Nor may this be done under the guise of corroborating evidence.

**7. Same—**

The trial court has the discretionary power to permit a party to cross-examine his own witness who is hostile, or surprises him by his testimony, for the purpose of refreshing the memory of the witness and enabling him to testify correctly, but not solely for the purpose of proving the witness to be unworthy of belief.

**8. Criminal Law § 42c: Evidence § 22—**

It is not permissible for a party to put before the jury under the guise of cross-examination incompetent matter inimical to his adversary.

**9. Criminal Law § 42f: Evidence § 17—**

The rule that a party may not impeach his own witness does not preclude a party from proving the facts to be different from those to which his witness testifies.

**10. Criminal Law § 42f—Held: Trial court committed error in permitting State to impeach its own witness.**

In this prosecution for larceny and conspiracy to commit larceny, the solicitor knew that one of the accomplices had repudiated his statement implicating appealing defendant, but nevertheless called him as a witness and on cross-examination interrogated him by questions framed so as to suggest to the jury that the appealing defendant was guilty and that the witness was testifying falsely in giving testimony favorable to appealing defendant, and also introduced in evidence the repudiated statement incriminating defendant. *Held:* Permitting the cross-examination and the introduction in evidence of the repudiated statement was prejudicial error.

APPEAL by defendant D. W. Snow from *Crisp, Special Judge,* and a jury, at March Term, 1953, of FORSYTH.

Criminal prosecution upon an indictment charging both a conspiracy to commit larceny and larceny.

For ease of narration, D. W. Snow is called the defendant, and Edward L. Tilley, R. A. Bowman, O. W. Crandell, and Everette H. Mabe are designated by their surnames.

The facts are summarized in the numbered paragraphs set forth below.

1. The Brown-Rogers-Dixson Company, a corporation, wholesaled television sets at Winston-Salem in Forsyth County.

2. During the calendar year 1951, Bowman was the custodian of the warehouse in which the Brown-Rogers-Dixson Company stored its television sets.

3. During the period beginning on 15 February and ending 4 July, 1951, Tilley surreptitiously and feloniously took and carried away from the warehouse twelve television sets belonging to the Brown-Rogers-Dixson Company of the value of $3,000.00.

4. Bowman, who received cash payments of money from Tilley for so doing, aided and abetted Tilley in the theft by surreptitiously delivering the television sets to Tilley at the warehouse and permitting him to carry them away.

5. On 21 November, 1951, Bowman admitted to an officer of the Brown-Rogers-Dixson Company that Tilley had stolen the twelve television sets and that he had aided and abetted Tilley in the theft.

6. Two days later, to wit, on 23 November, 1951, Bowman signed a written statement susceptible of the construction that the defendant induced him to aid and abet in the theft of some or all of the television sets.

7. Subsequent to this event, Bowman, who reads with much difficulty, stoutly maintained to the district solicitor, the police officers investigating the theft, and others that his statement of 23 November, 1951, "wasn't the truth"; that he did not know it was susceptible of the construction set forth in the preceding paragraph when he signed it; that he and Tilley were the only parties to the theft; and that the defendant had no connection with it. Bowman went so far as to deliver to the district solicitor a document drafted by his counsel and signed by him in which he reiterated his assertion that the defendant did not have anything to do with the crime committed by him and Tilley.

8. Subsequent to 23 November, 1951, the defendant, Tilley, Bowman, Crandell, and Mabe were indicted by the grand jury upon two counts. The first count charged them with a conspiracy to steal television sets belonging to the Brown-Rogers-Dixson Company of the value of more than $100.00; and the second count charged them with the actual larceny of television sets owned by the Brown-Rogers-Dixson Company of the value of more than $100.00. The transcript of the record certified to us shows that Crandell was tried and acquitted before the March Term, 1953, of the Superior Court of Forsyth County, but omits all mention of Mabe except the bare fact of his indictment.

9. The case was called for trial as to the defendant, Tilley, and Bowman at the March Term, 1953, of the Superior Court of Forsyth County. Tilley and Bowman entered general pleas of guilty. The defendant

pleaded not guilty to both counts, and was placed on trial before a petit jury.

10. Tilley, who was called to the stand as a State's witness, testified that the defendant actually hired him and Bowman to steal the television sets from the Brown-Rogers-Dixson Company; that he stole the television sets from the Brown-Rogers-Dixson Company with the assistance of Bowman pursuant to such hiring; and that the defendant received the stolen television sets after they had been removed from the warehouse and disposed of them. The defendant, who testified in his own behalf, denied in emphatic terms that he had any connection with the theft or the stolen property.

11. Despite his knowledge of the matters recited in paragraph 7, the district solicitor put Bowman on the stand as a witness for the State, and drew from him testimony to the effect that he and Tilley were the only parties to the theft and that the defendant had nothing to do with it.

12. After the solicitor had elicited this testimony, the trial judge, who professedly acted in the exercise of his discretion, allowed the solicitor to propound to Bowman over the objections of the defendant numerous argumentative and leading questions concerning the statement of 23 November, 1951, and other matters which were so framed, whatever their true object may have been, as to suggest to the jury that the defendant was undoubtedly guilty and that Bowman was testifying falsely in denying the defendant's participation in the crime. Despite this ordeal, Bowman persisted in his denial of the defendant's complicity.

13. The solicitor was also permitted to put in evidence over the exception of the defendant the written statement signed by Bowman on 23 November, 1951. The statement was offered and admitted generally; and the trial judge did not instruct the jury at any time as to the purpose for which it might be considered. Indeed, the trial judge did not mention Bowman, or his testimony, or the statement during his charge.

14. The jury found the defendant "guilty of conspiracy and larceny as charged in the bill of indictment"; the trial judge sentenced the defendant to imprisonment as a felon; and the defendant appealed, assigning errors.

*Attorney-General McMullan, Assistant Attorneys-General Moody and Love, and Robert L. Emanuel, Member of Staff, for the State, appellee.*

*Higgins & McMichael and H. Bryce Parker for defendant D. W. Snow, appellant.*

ERVIN, J. The defendant insists primarily that he is entitled to a reversal for insufficiency of testimony. This claim is insupportable. The evidence of the State's witness Tilley was amply sufficient to carry the

case to the jury on both counts of the indictment. *S. v. Bennett,* 237 N.C. 749, 76 S.E. 2d 42.

This is true notwithstanding Tilley claimed to be an accomplice of the defendant, and notwithstanding Bowman, another supposed accomplice, was custodian of the warehouse in which the goods were stored by their owner. It is well settled in this jurisdiction that although the jury should receive and act upon such testimony with caution, the unsupported testimony of an accomplice is sufficient to sustain a conviction if it satisfies the jury beyond a reasonable doubt of the guilt of the accused. *S. v. Rising,* 223 N.C. 747, 28 S.E. 2d 221; *S. v. Lippard,* 223 N.C. 167, 25 S.E. 2d 594; *S. v. Reddick,* 222 N.C. 520, 23 S.E. 2d 909; *S. v. Gore,* 207 N.C. 618, 178 S.E. 209; *S. v. Herring,* 201 N.C. 543, 160 S.E. 891; *S. v. Casey,* 201 N.C. 185, 159 S.E. 337; *S. v. Shew,* 196 N.C. 386, 145 S.E. 679; *S. v. Ashburn,* 187 N.C. 717, 122 S.E. 833; *S. v. Bailey,* 179 N.C. 724, 102 S.E. 406; *S. v. Palmer,* 178 N.C. 822, 101 S.E. 506; *S. v. Jones,* 176 N.C. 702, 97 S.E. 32; *S. v. Smith,* 170 N.C. 742, 87 S.E. 98; *S. v. Shaft,* 166 N.C. 407, 81 S.E. 932, Ann. Cas. 1916C, 627; *S. v. Neville,* 157 N.C. 591, 72 S.E. 798; *S. v. Register,* 133 N.C. 746, 46 S.E. 21; *S. v. Barber,* 113 N.C. 711, 18 S.E. 515; *S. v. Miller,* 97 N.C. 484, 2 S.E. 363; *S. v. Stroud,* 95 N.C. 626; *S. v. Holland,* 83 N.C. 624, 35 Am. R. 587; *S. v. Hardin,* 19 N.C. 407; *S. v. Haney,* 19 N.C. 390. Bowman was entrusted at most with the bare custody of the goods, whose possession in contemplation of law remained in the Brown-Rogers-Dixson Company until Tilley feloniously took and carried them away. *S. v. Ruffin,* 164 N.C. 416, 79 S.E. 417, 47 L.R.A. (N.S.) 852; *S. v. Jarvis,* 63 N.C. 556; *S. v. Jones,* 19 N.C. 544; *S. v. Higgins,* 1 N.C. 36; *People v. Goldberg,* 327 Ill. 416, 158 N.E. 680; *Roeder v. State,* 39 Tex. Cr. 199, 45 S.W. 570; Brill: Cyclopedia of Criminal Law, Section 765; 32 Am. Jur., Larceny, Section 59; 52 C.J.S., Larceny, Section 43.

The defendant contends secondarily that he is entitled to a new trial because the trial judge erred in permitting the solicitor to cross-examine the State's witness Bowman, and to put in evidence the written statement signed by Bowman on 23 November, 1951. The question of the validity of this contention turns in large measure on the common law rule which forbids a party to impeach his own witness.

This ancient rule has been roundly condemned by commentators on the law of evidence. Am. Law Inst., Model Code of Evidence, pages 20, 119; Stansbury on North Carolina Evidence, Section 40, note 92; Wigmore on Evidence (Perm. Ed.), Sections 896-899. It is nevertheless accepted as sound law in this State. Indeed, it was given legislative recognition by the General Assembly of 1951. See: G.S. 1-568.25. The rule and its corollaries are thus exemplified in North Carolina decisions:

1. A party cannot impeach his own witness either in a civil or in a criminal case. *Morris v. Service Co.,* 214 N.C. 562, 199 S.E. 922; *Clay v. Connor,* 198 N.C. 200, 151 S.E. 257; *S. v. Neville,* 175 N.C. 731, 95 S.E. 55; *Worth Co. v. Feed Co.,* 172 N.C. 335, 90 S.E. 295; *Smith v. Railroad,* 147 N.C. 603, 61 S.E. 575; *Kendrick v. Dellinger,* 117 N.C. 491, 23 S.E. 438; *Strudwick v. Brodnax,* 83 N.C. 401; *Wilson v. Derr,* 69 N.C. 137; *Shelton v. Hampton,* 28 N.C. 216; *Sawrey v. Murrell,* 3 N.C. 397. Despite an early decision to the contrary (*S. v. Norris,* 2 N.C. 429, 1 Am. D. 564), the rule applies to the State as well as to other litigants. *S. v. Freeman,* 213 N.C. 378, 196 S.E. 308; *S. v. Cohoon,* 206 N.C. 388, 174 S.E. 91; *S. v. Melvin,* 194 N.C. 394, 139 S.E. 762; *S. v. Mace,* 118 N.C. 1244, 24 S.E. 798; *S. v. Taylor,* 88 N.C. 694 (overruling *S. v. Norris, supra*).

2. A party makes a witness his own within the rule forbidding impeachment by putting him on the witness stand and examining him as a witness at the trial of the cause. *Strudwick v. Brodnax, supra.* A party does not make one his witness by subpoenaing him as a witness; or by causing him to be sworn as a witness; or by taking his deposition as a witness, unless he offers the deposition or part of it in evidence at the trial. *Neil v. Childs,* 32 N.C. 195; 58 Am. Jur., Witnesses, Section 793; 70 C.J., Witnesses, Section 992.

3. A party even makes an adverse party in the litigation his own witness, and by reason thereof is not allowed to impeach him if he calls and examines the adverse party as a witness at the trial of the cause. *Helms v. Green,* 105 N.C. 251, 11 S.E. 470, 18 Am. S. R. 893; *Olive v. Olive,* 95 N.C. 485; *Strudwick v. Brodnax, supra.* But a party does not make his adversary his witness by taking his adverse examination before the trial, unless he offers the adverse examination or part of it in evidence at the trial. *Hudson v. Jordan,* 108 N.C. 10, 12 S.E. 1029; *Shober v. Wheeler,* 113 N.C. 370, 18 S.E. 328. Moreover, a judgment creditor does not make a judgment debtor his witness by examining him in a proceeding supplemental to execution to compel him to disclose his assets. *Coates Bros. v. Wilkes,* 92 N.C. 376.

4. The reason ordinarily advanced in support of the rule forbidding a party to impeach his own witness is that in calling the witness the party represents him to be worthy of belief. *Lynch v. Veneer Co.,* 169 N.C. 169, 85 S.E. 289; *S. v. Taylor, supra; Hice v. Cox,* 34 N.C. 315. This reason and the rule grounded on it can have no application where the calling of the witness is required by law. A party may, therefore, impeach a witness, such as an attesting or subscribing witness to a will or other instrument, whom the law compels him to call. *Smith v. Railroad, supra; Hice v. Cox, supra; Bell v. Clark,* 31 N.C. 239; *Crowell v. Kirk,* 14 N.C. 355. A witness of this character is said to be the witness of the

law rather than the witness of the party calling him. *Bell v. Clark, supra.*

5. To impeach a witness is to attack his credibility. *McDowell v. Staley,* 231 N.C. 65, 55 S.E. 2d 798; *Smith v. Railroad, supra; Helms v. Green, supra; Strudwick v. Brodnax, supra; Shelton v. Hampton, supra.* The rule that a party cannot impeach his own witness precludes him from showing that the general character of the witness is bad (*Hice v. Cox, supra; Neil v. Childs, supra*), or that the witness made statements at other times inconsistent with or contradictory of his testimony at the trial. *S. v. Bagley,* 229 N.C. 723, 51 S.E. 2d 298; *S. v. Freeman, supra; S. v. Melvin, supra; S. v. Taylor, supra; Hice v. Cox, supra.* The law will not permit a party to circumvent the rule by introducing the contradictory or inconsistent statements of the witness under the guise of corroborating evidence. *S. v. Bagley, supra; S. v. Melvin, supra.* "In no aspect of the law of evidence can prior contradictory statements of a witness be used as corroborating evidence." *S. v. Melvin, supra; S. v. Lassiter,* 191 N.C. 210, 131 S.E. 577.

6. The trial judge has the discretionary power to permit a party to cross-examine his own witness for a legitimate purpose. *S. v. Buck,* 191 N.C. 528, 132 S.E. 151; *Howell v. Solomon,* 167 N.C. 588, 83 S.E. 609; *S. v. Cobb,* 164 N.C. 418, 79 S.E. 419; *Bank v. Carr,* 130 N.C. 479, 41 S.E. 876; *Crenshaw v. Johnson,* 120 N.C. 270, 26 S.E. 810. Accordingly, the trial judge may let a party cross-examine his own witness, who is hostile or who surprises him by his testimony, for the purpose of refreshing the recollection of the witness and enabling him to testify correctly. *S. v. Vicks,* 223 N.C. 384, 26 S.E. 2d 873; *S. v. Inscore,* 219 N.C. 759, 14 S.E. 2d 816; *In re Will of Williams,* 215 N.C. 259, 1 S.E. 2d 857; *S. v. Noland,* 204 N.C. 329, 168 S.E. 412; *S. v. Taylor, supra.* In so doing, the trial judge may permit the party to call the attention of the witness directly to statements made by the witness on other occasions. *S. v. Noland, supra; S. v. Taylor, supra.* But the trial judge offends the rule that a witness may not be impeached by the party calling him and so commits error if he allows a party to cross-examine his own witness solely for the purpose of proving him to be unworthy of belief. *Morris v. Service Co., supra; S. v. Neville, supra* (175 N.C. 731, 95 S.E. 55); *S. v. Taylor, supra; State v. Scarborough,* 152 La. 669, 94 So. 204; *State v. Scott,* 55 Utah 553, 188 P. 860. And even apart from the rule under present consideration, it is not permissible for a party to put before the jury under the guise of cross-examination incompetent matter inimical to his adversary. *Ingram v. State,* 78 Tex. Cr. 559, 182 S.W. 290; 58 Am. Jur., Witnesses, Section 622.

7. The rule which forbids a party to impeach his own witness does not contemplate that the party is bound by what his witness says. Consequently, he is at liberty to prove by other witnesses or other competent

evidence a state of facts different from that to which his witness testifies. *Matheny v. Motor Lines*, 233 N.C. 673, 65 S.E. 2d 361; *McDowell v. Staley, supra; Ross v. Tel. Co.*, 219 N.C. 324, 13 S.E. 2d 571; *S. v. Cohoon, supra; Clay v. Connor, supra; Worth Co. v. Feed Co., supra; Lynch v. Veneer Co., supra; Smith v. Railroad, supra; S. v. Mace, supra; Kendrick v. Dellinger, supra; Chester v. Wilhelm*, 111 N.C. 314, 16 S.E. 229; *Helms v. Green, supra; McDonald v. Carson*, 94 N.C. 497; *Coates Bros. v. Wilkes, supra; Gadsby v. Dyer*, 91 N.C. 311; *Strudwick v. Brodnax, supra; Hice v. Cox, supra; Shelton v. Hampton, supra; Spencer v. White*, 23 N.C. 236. One of the greatest of jurists, *Chief Justice Thomas Ruffin*, declared that there is in this instance "no attempt to discredit the witness. A party may prove that the fact is not as it is stated to be by one of his witnesses; for that is merely shewing a mistake, to which the best of men are liable." *Spencer v. White, supra.* Another able judge, *Justice Frederick Nash,* said: "The other witnesses, in such case, are not called to discredit the first, but the impeachment is incidental and consequential only." *Hice v. Cox, supra.*

The case on appeal engenders the abiding impression that when he called Bowman to the witness stand as a State's witness, the solicitor knew that Bowman would give substantive testimony favorable to the defendant, and that the prospect of Bowman being influenced by examination or cross-examination to alter such testimony to the State's advantage was so remote as to be virtually nonexistent. Notwithstanding this knowledge, the solicitor put to Bowman by leave of the trial judge numerous leading and argumentative questions concerning the statement of 23 November, 1951, and other matters which were so framed, whatever their true object may have been, as to suggest to the jury that the defendant was undoubtedly guilty and that Bowman was testifying falsely in giving evidence favorable to him. In the very nature of things, the immediate and inevitable result of the solicitor's cross-examination of the State's witness Bowman was to impeach Bowman and place before the jury incompetent matter harmful to the defendant. We are, therefore, constrained to hold in view of the circumstances revealed by the case on appeal now before us that the trial judge erred to the prejudice of the defendant in allowing the solicitor to cross-examine Bowman. We are also obliged to adjudge that the trial judge committed further prejudicial error in admitting in evidence Bowman's repudiated statement of 23 November, 1951, which was incompetent for all purposes. Since they were never instructed as to how they were to consider it, the trial jurors undoubtedly accepted the statement as substantive evidence indicating the defendant's guilt as well as impeaching evidence pointing to Bowman's testimonial unreliability.

These errors necessitate a

New trial.