STATE .v. J. C. PARISH.

*Evidence.*

The former statements of a witness, made without the sanction of an oath, and coinciding with those made on the stand, may be admitted in evidence, if he is impeached, to sustain the personal *credibility* of the *witness,* but not for the purpose of confirming his *statement* as to the *facts* sworn to by him on the trial; *A fortiori* such testimony is not admissible to confirm the statement of another witness testifying to the same effect.

INDICTMENT for Larceny tried at May Term, 1878, of WAKE Criminal Court, before *Strong, J.*

It was in evidence that John Jones had lost two sheep between the 20th and 28th of August, 1876, and that the defendant at that time owned no sheep. One Dick Young, a witness for the State, testified that soon after Jones lost them he saw the sheep shut up in an old out house in possession of defendant, and a short distance from his residence; that when he saw them he was in company with his son, Thomas Young, the witness next introduced, whose testimony corroborated the above, and during whose examination he was ordered by the Court to stop, but failing to do so, was ordered several times by the defendant's counsel in a loud and disrespectful manner, to stop. The State next proposed to prove by one Lewis Jones, in order to confirm the evidence of the two first witnesses, that Thomas Young, shortly after the loss of the sheep and before the defendant had been accused of the larceny or receiving, &c., had made the same statement to the witness that he had given to the jury. The defendant objected to the evidence, the Court overruled the objection, and the witness said that Young had made the same statement to him.

It was also in evidence that John Jones lived one mile from the defendant and owned a large number of sheep, among them the particular ones alleged to have been stolen by the defendant; that for several months before their loss, they were in the habit of grazing in defendant's field where the out house was situated in which the sheep were seen by the witness as aforesaid; that about the time they were lost, one Crawford bought two sheep of defendant, corresponding in description with them; Crawford at that time was living about eight miles from Raleigh, and while on his way to Raleigh about daylight carrying beef to market, he was overtaken by defendant, also going to Raleigh, with the sheep, and after some conversation in regard to the price, he bought them of defendant in the presence of one Nowell, and left them with one Johnston who lived by the road side

to keep for him until his return from Raleigh; that upon Crawford's proposing to put them in an enclosure surrounded by a fence, the defendant said he. had better put them in a stable or confine them in some other place, that they were mischievous and might get. away; that they were tied and left inside the fence where they could have been seen by passers-by.

It was further in evidence that the defendant since the indictment was found had denied to Crawford that he bought the sheep from him, and accused Crawford of stealing them himself; but one Stills, a butcher, testified that about the last of August, 1876, the defendant told him he had two sheep to sell, (described as those in question) and that soon afterwards on asking the defendant where they were, he replied that he had sold them to Crawford.

The defendant's counsel requested the Court to instruct the jury that there was no evidence that defendant had received the sheep knowing them to have been stolen, which was refused, and the defendant excepted. There was a verdict of not guilty of larceny, but guilty of receiving, &c. Judgment. Appeal by the defendant.

*Attorney General, D. G. Fowle* and *W. H. Pace*, for the State.

*Mr. T. M. Argo*, for the defendant.

READE, J. It can scarcely be satisfactory to any mind to say that if a witness testifies to a statement to day under oath, it strengthens the statement to prove that he said the same thing yesterday when not under oath. If the proposition were reversed, as if one make a statement to day not under oath, it strengthens the statement to show that he said the same yesterday under oath, it would be conceded because of the sanction of the oath. And yet it must be conceded that it is settled by the weight of authority both

of text writers and decided cases that when a witness testifies to a statement under oath, and the witness is impeached, he may be supported by proving that on a former occasion he had made the same statement, although not under oath. As first administered the rule was sensible and useful. A witness was called and testified and impeached upon the ground of some new relation to the cause or to the parties, and then other witnesses were called to prove that he had made the same statement prior to such new relation or supposed influence, or where from lapse of time his memory was impeached it was proved that he made the same statement when the memory was fresh. All that was sensible and useful. But the idea that the mere repetition of a story gives it any force or proves its truth, is contrary to common observation and experience that a *falsehood* may be repeated as often as the *truth*. Indeed it has never been supposed by any writer or Judge that the repetition had any force as substantive evidence to prove the *facts*, but only to remove an imputation upon the witness. It is like to evidence of character which only affects the *witness*.

For illustration: Thomas Young one of the witnesses for the State swore that he saw the stolen property in the possession of the defendant. He was not cross-examined, not contradicted, his character not assailed, nor was he in any way impeached, but stood before the Court as any other witness upon his merits. And the State, lest his story might not be believed, proved by another witness that he had heard him tell the same story before. Now suppose Thomas Young had not been a witness at all, would it have been competent for the State to prove that he had said upon some occasion that he had seen the stolen property in the defendant's possession? Of course not. It would have been nothing but hearsay. If then it would not have been evidence to prove the fact, if Thomas Young had not been a witness, how was it evidence to prove the fact, he being a witness? It was

not evidence to prove the *fact* in the one case more than in the other. He being a witness, such testimony would have been competent to remove some imputation upon him if any had been cast, and for that purpose only; and as no imputation had been cast upon him there was no purpose for which it was competent. If he stood before the Court unimpeached, it was unnecessary and mischievous to encumber the Court and oppress the defendant with his garrulousness out of Court and when not on oath.

The rule is, that when the witness is impeached—observe, when the *witness* is impeached—it is competent to support the *witness* by proving consistent statements at other times, just as a witness is supported by proving his character, but it must not be considered as substantive evidence of the truth of the *facts* any more than any other hearsay evidence. The fact that supporting a witness who testifies, does indirectly support the facts to which he testifies, does not alter the case. That is incidental. He is supported not by putting a prop under him, but by removing a burden from him, if any has been put upon him. How far proving consistent statements will do that, must depend upon the circumstances of the case. It may amount to much or very little.

The admission of the former declarations of Thomas Young to " *confirm this evidence,*" would have been error even if he had been impeached, but as he was not impeached it would have been error to have admitted it even for the purpose of supporting the *witness*.

But a more palpable error than this was committed. The former declarations of Thomas Young were admitted not only to " confirm his own evidence " but to " confirm the evidence" of another witness, Dick Young. This is without precedent. As well might it be said that to prove one of a dozen witnesses to be of good character is to prove all to be so, or to sustain one is to sustain all. This *is* put upon the

ground that both witnesses testified as to the same facts, and therefore, if one was to be believed, so was the other. Let us see if that is so:—

A and B both swore that they were in the city of New York on the 4th of July last and witnessed the celebrations of the day which they describe. A was in fact there, but it is proved by a dozen witnesses that B was not there but was in Raleigh ; would it " confirm the evidence" of B to prove that A had given the same account of the celebration before the trial as upon the trial ? Clearly not. No more does the former consistent account of Thomas Young " confirm the evidence" of Dick Young.

It is not necessary for us to decide whether the misbehavior of Dick Young on the trial which neither the Judge nor the counsel could control, impeached his credibility so as to allow him to be supported by his former consistent statement, for no such statement was offered.

Error. *Venire de novo.*