STATE OF NORTH CAROLINA v. JERRY ROSS LUCAS, JR.

No. 67

(Filed 4 March 1981)

**1. Rape §§ 2, 5— second degree sexual offense — meaning of "any object"**

In defining a "sexual act" in G.S. 14-27.1(4) as "the penetration, however slight, by any object into the genital or anal opening of another person's body," the legislature intended the words "any object" to embrace parts of the human body as well as inanimate or foreign objects. Therefore, the State's evidence was sufficient for the jury in a prosecution for second degree sexual offense where it tended to show that defendant penetrated the genital opening of the prosecutrix's body with his fingers.

**2. Criminal Law §§ 66, 89.3— victim's prior identification of defendant — admissibility for corroboration**

In a prosecution for second degree sexual offense, the victim's testimony as to her previous identification of defendant at the probable cause hearing was competent to corroborate her in-court identification of defendant.

**3. Criminal Law §§ 50, 71— testimony that slivers "appeared to be" glass — competency**

Testimony by a police officer that defendant had what appeared to be slivers of glass in his hair, in his pants and imbedded into his leather jacket at the time of his arrest did not violate the opinion rule of evidence since the slivers of glass could hardly be described otherwise, and the witness was in a better position than the jury to draw the conclusion as to whether the slivers were glass.

**4. Arrest and Bail § 3.5; Searches and Seizures § 7— probable cause for arrest**

State v. Lucas

— seizure of clothing incident to lawful arrest
   An officer had probable cause to arrest defendant for burglary and second
degree sexual offense where the officer questioned defendant near the crime
scene shortly after receiving a radio dispatch concerning the crimes but did not
arrest him at that time; the officer then went to the victim's residence where he
received a description of the burglar and his clothing; and realizing the descrip-
tion fit the appearance of defendant, the officer went looking for defendant,
removed him from a passing vehicle, and took him to the police station. There-
fore, defendant's clothing was properly seized at the police station as an incident
of his lawful arrest and was properly admitted into evidence at his trial.

DEFENDANT appeals from judgments of *Reid, J.*, entered at
the 30 April 1980 Session, WASHINGTON Superior Court.

Defendant was tried upon separate bills of indictment, proper
in form, charging him with (1) first degree burglary in violation of
G.S. 14-51, (2) second degree sexual offense upon Helen Peele in
violation of G.S. 14-27.5 and (3) common law robbery of Helen
Peele. All three offenses allegedly occurred on 8 January 1980.

The State offered evidence tending to show that Helen Peele
was seventy-one years old and lived alone. On 8 January 1980, she
was in bed watching television. Shortly before 1 a.m., she heard
"something like glass falling" and got up to investigate. When she
got into the dining room she saw a man "backing in the window."
The entire window had been broken out, and the man backed
through the window into the room. She screamed and ran to her
bedroom and closed the door, but the man pushed it open. They
struggled, and the intruder asked, "Where is your damn money?"
She pointed to her coat nearby, but the man said he didn't want
money but wanted sex. The struggle continued, and the man
started choking her and beating her in the face saying, "I'll kill
you." They fell on the floor and her assailant penetrated her vagina
with his fingers. The man then left the house through the same
window by which he had entered. Mrs. Peele ran to a neighbor's
house and a passing motorist alerted the police. She gave the offi-
cers a description of her assailant, including his clothing, and
stated that he had the odor of alcohol about him. Mrs. Peele
returned to her home and discovered two pocketbooks missing with
thirty-seven dollars in currency in them.

Over objection, Mrs. Peele identified defendant in court as the
intruder who had assaulted her and stated that she had seen him at
the probable cause hearing and identified him there.

Officer Curtis Johnson of the Plymouth Police Department received a call at 12:52 a.m. on 8 January 1980 while he was on patrol duty. Within three minutes he encountered defendant Lucas and interrogated him for four or five minutes. Officer Johnson then went to Mrs. Peele's residence, where he received a description of the person involved. He then went looking for defendant, removed him from a passing vehicle and took him to the police station. Defendant had slivers of glass in his hair and pants and some were embedded in his leather jacket. He had welts on his chest and a cut between his fingers. He had in his possession two ten-dollar bills, two five-dollar bills and a key to Room No. 35 at the Pinetree Motel. Officer Johnson further testified that he was in court on 16 January 1980 at a preliminary hearing for defendant and that Mrs. Peele identified defendant as her assailant at that time. There were seventy-three people in the courtroom.

Willie Hart was driving the car from which defendant was removed when arrested. Hart testified defendant came to his door, asked for a ride to Sand Hill and gave him two one-dollar bills with which to buy gas. As they were riding on the Sand Hill road, the car was stopped and defendant was arrested. Hart further stated that defendant was wearing a coat but he did not see any glass slivers or other glittering material on it.

Police Chief Floyd Woodley testified he found two purses at 207 Monroe Street about a block and three-quarters from Mrs. Peele's house.

SBI Agent Steve Jones, an expert in the examination and comparison of known inked impressions with latent fingerprints, testified he compared a latent palm print lifted from the windowsill of Mrs. Peele's house with a known inked impression of defendant's palm print, found twenty-two points of identification, and in his opinion the person who made the inked palm print impression also made the latent palm print impression on the windowsill of Mrs. Peele's house.

Defendant offered no evidence.

The jury convicted defendant on all three charges. He received a life sentence for the first degree burglary which he appealed to this Court. We allowed motion to bypass the Court of Appeals on the sexual assault and robbery convictions for which he received sentences of sixteen years and four years, respectively, to the end that

initial appellate review in all cases be had in the Supreme Court.

*Rufus L. Edmisten, Attorney General, by Daniel C. Oakley, Assistant Attorney General, for the State.*

*Maynard A. Harrell, Jr., attorney for defendant appellant.*

HUSKINS, Justice.

[1] Defendant's motion at the close of the State's evidence to dismiss the charge of second degree sexual assault was denied. This ruling is the basis for his first assignment of error.

G.S. 14-27.5 provides in pertinent part as follows:

(a) A person is guilty of a sexual offense in the second degree if the person engages in a sexual act with another person:

(1) By force and against the will of the other person;

. . . .

(b) Any person who commits the offense defined in this section is guilty of a felony and upon conviction shall be punished by imprisonment in the State's prison for a term of not more than 40 years.

G.S. 14-27.1(4) defines "the penetration, however slight, by any object into the genital or anal opening of another person's body . . ." as a "sexual act."

The evidence in this case tends to show that defendant penetrated the genital opening of Helen Peele's body with his fingers. Defendant contends this is not a "sexual act" under the statute because the Legislature only intended the words "any object" in G.S. 14-27.1(4) to mean any object foreign to the human body. Defendant cites no authority in support of his position.

In the interpretation and construction of statutes, the task of the judiciary is to seek the legislative intent. *Housing Authority v. Farabee*, 284 N.C. 242, 200 S.E.2d 12 (1973). This rule applies not only to civil statutes but to criminal statutes as well. *State v. Brown*, 221 N.C. 301, 20 S.E.2d 286 (1942); *State v. Humphries*, 210 N.C. 406, 186 S.E. 473 (1936). Criminal statutes must be strictly, but not stintingly or narrowly, construed. *State v. Spencer*, 276 N.C. 535,

173 S.E.2d 765 (1970). The words and phrases of a statute must be construed as a part of the composite whole and accorded only that meaning which other modifying provisions and the clear intent and purpose of the act will permit. Where the Legislature defines a word used in a statute, that definition is controlling even though the meaning may be contrary to its ordinary and accepted definition. *Vogel v. Supply Co.*, 277 N.C. 119, 177 S.E.2d 273 (1970).

When the foregoing rules of statutory construction are applied to G.S. 14-27.1(4), we are of the opinion, and so hold, that the Legislature did not intend to limit the meaning of the words "any object" to objects foreign to the human body. The complete definition of "sexual act" contained in the statute reads as follows:

> "Sexual act" means cunnilingus, fellatio, analingus, or anal intercourse, but does not include vaginal intercourse. Sexual act also means the penetration, however slight, by any object into the genital or anal opening of another person's body: Provided, that it shall be an affirmative defense that the penetration was for accepted medical purposes.

It is noted that all sexual acts specifically enumerated in the statute relate to sexual activity involving parts of the human body. The only sexual act excluded from the statutory definition relates to vaginal intercourse, a necessary omission because vaginal intercourse is an element of the crimes of first and second degree rape which are defined in G.S. 14-27.2 and G.S. 14-27.3. The words "sexual act" do not appear in these rape statutes. The words do appear in G.S. 14-27.4 and G.S. 14-27.5 which define the crimes of first and second degree "sexual offense." The Legislature must have intended "sexual act" as defined in G.S. 14-27.1(4) to encompass every penetration other than vaginal intercourse. We therefore conclude that the Legislature used the words "any object" to embrace parts of the human body as well as inanimate or foreign objects. If the lawmaking body had a different intent, it could have easily expressed it. Defendant's first assignment of error is overruled.

**[2]**  At trial, Mrs. Peele identified defendant from the witness stand without objection as the man who broke into her home and assaulted her. She was then permitted to testify over objection that she had previously picked defendant out of the crowd in the courtroom at the probable cause hearing and identified him as her

---

State v. Lucas

---

assailant at that time. Admission of her testimony as to the previous identification constitutes defendant's second assignment of error.

There is nothing in the record to suggest that Mrs. Peele's previous identification of defendant at the probable cause hearing was tainted by impermissibly suggestive procedures. Defendant does not challenge admission of the evidence on that ground. Rather, he contends that Mrs. Peele's credibility had not been impeached and therefore her testimony as to her previous identification of defendant at the probable cause hearing could not be used to bolster and strengthen the credibility of her in-court identification testimony. For reasons which follow, we think defendant's position is unsound.

It seems that most jurisdictions will not receive evidence to support the credibility of a witness unless that witness has been directly impeached. *See* 4 Wigmore, Evidence, § 1124 (Chadbourn rev. 1972). The necessity for some kind of impeachment or attack on the credibility of the witness is recognized in some of our earlier cases. *See State v. Cope,* 240 N.C. 244, 81 S.E.2d 773 (1954); *Gibson v. Whitton,* 239 N.C. 11, 79 S.E.2d 196 (1953); *State v. Melvin,* 194 N.C. 394, 139 S.E. 762 (1927); *Bowman v. Blankenship,* 165 N.C. 519, 81 S.E. 746 (1914); *State v. Parish,* 79 N.C. 610 (1878). As these and other cases reveal, however, we have recognized that impeachment may arise from proof of bad character, contradictory statements, vigorous cross-examination, contradiction by other witnesses, or the varied position of the witness in reference to the cause and its parties. As a result, "the necessity of impeachment as a prerequisite to corroboration would seem to be more theoretical than real. Indeed, the more recent cases tend to ignore the requirement of impeachment altogether." 1 Stansbury's North Carolina Evidence § 50, p. 144 (Brandis rev. 1973). *See State v. Carter,* 293 N.C. 532, 238 S.E.2d 493 (1977); *State v. Cook,* 280 N.C. 642, 187 S.E.2d 104 (1972); *State v. Best,* 280 N.C. 413, 186 S.E.2d 1 (1972); *State v. Fox,* 277 N.C. 1, 175 S.E.2d 561 (1970); *State v. Primes,* 275 N.C. 61, 165 S.E.2d 225 (1969); *State v. Paige,* 272 N.C. 417, 158 S.E.2d 522 (1968); *State v. Rose,* 270 N.C. 406, 154 S.E.2d 492 (1967); *State v. Case,* 253 N.C. 130, 116 S.E.2d 429 (1960), *cert. den.,* 365 U.S. 830, 5 L.Ed.2d 707, 81 S.Ct. 717 (1961); *State v. Rose,* 251 N.C. 281, 111 S.E.2d 311 (1959). In fact, the admissibility of prior consistent statements of a witness to strengthen his credibility has been reaffirmed by this Court in scores of cases where the credibility of the

witness has been impugned in any way. *See, e.g., State v. Brodie,* 190 N.C. 554, 130 S.E.2d 205 (1925). If the previous statement of the witness was substantially consistent with the testimony of the witness at trial, it has been held to be admissible for corroborative purposes. If the prior statement is substantially inconsistent with the testimony of the witness at trial, it is admissible for impeachment purposes. Such is the rule with us. It is grounded upon the obvious principle that the consistent statements sustain and strengthen, while conflicting statements impair the credibility of the witness before the jury.

For the reasons stated, we hold that the challenged evidence was competent and properly admitted. Defendant's second assignment of error is overruled.

[3] Officer Curtis Johnson was permitted to testify over objection that when he removed defendant from the vehicle driven by Willie Hart and took him to the police station, defendant had what appeared to be slivers of glass in his hair and in his pants as well as embedded into his leather jacket. Admission of this testimony constitutes defendant's third assignment of error.

Defendant argues the testimony challenged by this assignment violates the opinion rule of evidence and is therefore inadmissible; that the witness could have described the substance to the jury and allowed it to form its own opinion as to whether it was glass or some other material; that the court's ruling permitted the witness to testify in an area requiring the testimony of experts. This prompts a brief examination of the opinion rule.

Opinion evidence is inadmissible if the witness can relate the facts "so that the jury will have an adequate understanding of them and the jury is as well qualified as the witness to draw inferences and conclusions from the facts." 1 Stansbury's North Carolina Evidence § 124, p. 388 (Brandis rev. 1973); *Beanblossom v. Thomas,* 266 N.C. 181, 146 S.E.2d 36 (1966). The evidence is admissible if either of these conditions is absent. Moreover, when the facts cannot be so described that the jury will understand them sufficiently to be able to draw its own inferences, the admissibility of opinion evidence is thoroughly established and is often characterized as a shorthand statement of fact, or the instantaneous conclusions of the mind, or natural and instinctive inferences, or the evidence of common observers testifying to the results of their observation. *See* 1 Stans-

bury's North Carolina Evidence § 125 (Brandis rev. 1973), and cases cited therein.

In the case before us, regardless of the characterization given to the statement of Officer Johnson concerning "what appeared to be" glass slivers, we hold the statement was competent and properly admitted because slivers of glass could hardly be described otherwise. To require the witness to describe the location, position, coloration and other minute characteristics so that the jury, who had not seen the slivers, could draw its own conclusions as to whether they were glass places form over substance and is contrary to common sense. The witness was in a better position than the jury to draw the conclusions. Defendant's third assignment is overruled.

[4] Finally, defendant challenges the seizure of his clothing and admission of the clothing into evidence. This constitutes his fourth and fifth assignments of error.

The record reveals that Officer Johnson questioned defendant shortly after receiving a radio dispatch concerning the burglary but did not arrest him at that time. The officer then went to Mrs. Peele's residence where he received a description of her assailant. Realizing the description fit the appearance of defendant Lucas, Officer Johnson continued his search and stopped a vehicle in which defendant was a passenger, removed him and took him to the police station. There, Officer Johnson advised defendant of his *Miranda* rights. Officer Inscoe, after conferring with Officer Johnson, placed defendant under arrest and requested Sergeant Mizell to obtain other clothing for defendant so defendant's clothing could be removed and retained for further examination. When Sergeant Mizell returned with other clothing, defendant's clothing was removed and retained. Evidence establishing all these facts was admitted without objection. In fact, the record shows that the clothing itself was also admitted without objection. Failure to object to the introduction of evidence is a waiver of the right to do so, "and its admission, even if incompetent, is not a proper basis for appeal." *State v. Hunter*, 297 N.C. 272, 278-79, 254 S.E.2d 521, 525 (1979); *see also State v. Nelson*, 298 N.C. 573, 260 S.E.2d 629 (1979).

In any event, the clothing was not seized as an incident to an illegal arrest. Defendant was not illegally arrested. He was arrested without a warrant upon probable cause. "An arrest without a warrant is based upon probable cause if the facts and circumstances

known to the arresting officer warrant a prudent man in believing that a felony has been committed and the person to be arrested is the felon." *State v. Alexander*, 279 N.C. 527, 532, 184 S.E.2d 274, 278 (1971). Here, Officer Johnson had observed defendant and his clothing, had received a description of the burglar's attire from Mrs. Peele and discovered defendant when he stopped the car of one Willie Hart. The arrest which followed thereafter was based upon probable cause. The officer had visited the crime scene and had reasonable grounds to believe that defendant committed the offense in question. *State v. Small*, 293 N.C. 646, 239 S.E.2d 429 (1977); *State v. Dickens*, 278 N.C. 537, 180 S.E.2d 844 (1971).

Defendant's clothing was lawfully seized and properly allowed into evidence. The authorities hold that handwriting samples, blood samples, fingerprints, *clothing*, hair, voice demonstrations, even the body itself, are identifying physical characteristics and outside the protection of the Fifth Amendment privilege against self-incrimination. *Schmerber v. California*, 384 U.S. 757, 16 L.Ed.2d 908, 86 S.Ct. 1826 (1966); *State v. Wright*, 274 N.C. 84, 161 S.E.2d 581 (1968), *cert. den.*, 396 U.S. 934, 24 L.Ed.2d 232, 90 S.Ct. 275 (1969); *State v. Gaskill*, 256 N.C. 652, 124 S.E.2d 873 (1962). "It is well settled in North Carolina that clothing worn by a person while in custody under a valid arrest may be taken from him for examination, and, when otherwise competent, such clothing may be introduced into evidence at his trial." *State v. Dickens*, 278 N.C. 537, 543, 180 S.E.2d 844, 848 (1971). Moreover, there is nothing in this record to indicate that the taking of defendant's clothing was other than with his voluntary cooperation.

We conclude that defendant had a fair trial free from prejudicial error. The verdicts and judgments based thereon must therefore be upheld.

No error.