STATE OF NORTH CAROLINA v. HILLARD ASHE

No. 283A84

(Filed 3 July 1985)

1. **Criminal Law § 101.4— jury request to review testimony refused—transcript not available—prejudicial error**

   In a prosecution for first-degree murder, the trial court erred by refusing the jury foreman's request to review testimony on the grounds that the transcript was not available. The court was required to exercise its discretion in determining whether to grant the request and its response was not an exercise of that discretion. There was prejudice because defendant's alibi was the only contested issue and whether the jury fully understood and appreciated the evidence on the alibi question was material to the determination of defendant's guilt or innocence. G.S. 15A-1233(a).

2. **Criminal Law § 101.4— jury request to review testimony refused—failure to return entire jury to courtroom—prejudicial error**

   In a prosecution for first-degree murder, the trial court erred by not summoning all the jurors to the courtroom to hear both the foreman's request to review testimony and the court's response. While G.S. 15A-1233(a) does not expressly say that the trial judge must have the jurors conducted to the courtroom, there is no doubt that the Legislature intended to place that responsibility on the judge presiding at trial. The failure to do so was prejudicial because all jurors should have been present to hear the request itself so that the court's response could be accurately assessed and properly understood. Moreover, although the foreman might have relayed the court's exact message, he might as easily have conveyed some altered message or phrased the judge's response in his own words in such a way as to alter its connotation and its import. G.S. 15A-1233.

3. **Jury § 3; Criminal Law § 101.4— errors in hearing and refusing jury's request to review testimony—no objection at trial—not waived**

   Defendant's failure to object at trial did not waive the trial court's errors in refusing the jury's request to review testimony as a matter of law and in not returning the entire jury to the courtroom because the errors violated defendant's right to a trial by a jury of twelve and were contrary to a statutory mandate. G.S. 15A-1233(a), Art. I, § 24 of the North Carolina Constitution.

   Justice MARTIN dissenting.

   Chief Justice BRANCH joins in the dissenting opinion.

   Justice VAUGHN did not participate in the consideration or decision of this case.

APPEAL by defendant pursuant to N.C.G.S. § 7A-27 from a judgment imposing life imprisonment, entered by *Judge Russell*

*Walker* at the 6 February 1984 Special Session of MACON County Superior Court, upon a verdict of guilty of first degree murder.[1]

*Rufus L. Edmisten, Attorney General, by Elizabeth C. Bunting, Assistant Attorney General, and Ellen B. Scouten, Associate Attorney, for the state.*

*Herbert L. Hyde for defendant appellant.*

EXUM, Justice.

The dispositive question presented is whether the trial court committed reversible error in denying a request to review portions of the testimony, made by the jury foreman after deliberations began, without requiring that all jurors be present to hear the court's response. We conclude that it did and remand the case for a new trial.

I.

In the evening of 21 August 1974, officers from the Cherokee County Sheriff's Department discovered Charles Clinton Odom dead in the bedroom of his mobile home. An autopsy revealed that Odom died as a result of one or more blows to the head with a blunt instrument. The crime lay unsolved for nine years.

In 1983 Robert Bryson came forward and gave investigators information about Odom's death. Bryson told police that he and his companions knew Odom owned a coin toss show in a traveling carnival and often carried large amounts of cash on his person. They formulated a plan to rob Odom as he returned home on the evening of 20 August. Both Bryson and Cathy Gunter made statements implicating Ted Killian, Lloyd Ashe, and Delbert Hickey, *but not the defendant*, in the crime.

Ted Killian was the state's chief witness against defendant. As a result of statements made by Gunter and Bryson, Killian

---

1. The crime for which defendant was convicted occurred on 20 August 1974 and was punishable under §§ 1 and 7, ch. 1201, 1973 Session Laws. Section 1 provided for a mandatory death sentence for first degree murder. Section 7 provided for mandatory life imprisonment if it were later determined that the death penalty as provided could not be constitutionally imposed. The United States Supreme Court held the mandatory death sentence provided in § 1 could not be constitutionally imposed in *Woodson v. North Carolina*, 428 U.S. 280 (1976). Thus Judge Walker imposed a sentence of life imprisonment pursuant to § 7.

had been charged with Odom's murder. He and his counsel worked out a plea bargain with the state pursuant to which Killian agreed to testify against defendant.[2] Before Killian was charged with Odom's murder on 6 January 1983, he had not told anyone about his involvement in the affair. He admitted that he was the one who struck the fatal blow resulting in Odom's death. He further admitted that at this time he was regularly consuming drugs and alcohol and that it was probable he was under the influence of drugs when he committed the crime. He said he had not consumed alcohol or drugs since he became married in 1975.

Killian testified as follows: He, defendant, Lloyd Ashe (defendant's brother), Carl Hickey, Cathy Gunter and Robert Bryson, believing that Charles Odom was in the habit of carrying large amounts of cash on his person, planned on the evening of 20 August 1974 to rob him. Pursuant to their plan, Killian and defendant went inside the trailer to wait for Odom to come home. Hickey and Lloyd Ashe waited behind the trailer. Gunter and Bryson remained in the automobile which was parked about a quarter of a mile from the trailer. The plan was to ambush Odom when he entered his trailer and "knock him out" before he could recognize who was present. Defendant "shimmied the door with a knife or something" to Odom's trailer and "I think . . . handed me a stick to knock Mr. Odom out with." When Odom entered the trailer door, Killian, with defendant standing at his side, hit Odom on the head with the stick, and Odom "fell back down into the yard." Defendant and Killian went out of the trailer and, together with Lloyd Ashe and Hickey, searched Odom's pockets. Odom "started coming to. When he started coming to, we ran off." Killian first learned that Odom was dead on 21 August 1974 but did not believe that he had killed him because "the paper stated he had died of natural causes." He said he first discovered he had killed Odom "when my lawyer went over the autopsy."

Defendant stipulated at trial to the truth of the conclusions of several physicians who examined Odom's body after his death including the testimony of the physician who performed the autopsy. In essence, defendant stipulated that: (1) Odom died from

---

2. In return for his testimony, Killian was allowed to plead guilty to second degree murder, sentenced to twenty years imprisonment and promised that he would not be incarcerated with his accomplices and the state would "look with favor" upon his parole when he became eligible.

one or more blows to the head with a blunt instrument; (2) Odom could have lived and moved himself for one hour or more after the blows occurred; and (3) the death was not an accident, but a homicide.

Defendant's only defense was alibi. On his behalf, Donna Gail Nichols testified that her husband was shot to death in Hayesville, North Carolina, on 17 August 1974 and was buried on 20 August.[3] Mrs. Nichols knew defendant who had been friends with her husband. She called defendant on 19 August 1974 and told him of the death of her husband, David Lee. She called defendant again on 20 August 1974 and asked him if he would return with her to Canton, Georgia, where she lived. She picked defendant up in Murphy around 5:30 or 6:30 p.m. on 20 August 1974 and they drove together to Canton, Georgia, which is about forty or forty-five miles northwest of Atlanta, arriving around 9:30 p.m. Defendant stayed with her until 24 August when she brought him back to Murphy.

Nichols also knew defendant's brother Jim. She was present in the courtroom in Cherokee County in 1983 when defendant's other brother, Lloyd, pled guilty to second degree murder of Odom. She knew that defendant had also been charged with the murder. When she learned that the date of the murder was 20 August 1974, she said to Jim Ashe, "My God Hillard [defendant] was with me at that time. He couldn't have been there."

Patricia Howard, Nichols' sister, corroborated Nichols. She recalled defendant being in Nichols' home on the day Nichols' husband was buried because it had made her angry. She testified, "I stayed [in Nichols' home] until a little after midnight. I was very angry. We had words because I didn't feel like it looked good for her to have another man in the house the same day that her husband was buried. And we had an argument to that effect. I guess that's one reason it sticks in my mind so much." Howard also recalled arguing with defendant on this evening, saying, "I told him I didn't think it looked proper that he was there whenever one of his best friends had been married to Donna." Howard was

---

3. Pursuant to a stipulation with the state, defendant offered in evidence a letter from the director of Ivie Funeral Home in Murphy dated 12 October 1983 certifying that funeral services were held on 20 August 1974 for David Lee Nichols, husband of the witness Donna Gail Nichols.

reluctant to come to court to testify but ultimately did so willing-ly and without subpoena because "I couldn't let somebody go to jail I knew was innocent, because I would never help someone I knew was guilty, or even thought was guilty either." She said, "I'm not overly fond of [defendant], but I do know him."

To rebut defendant's alibi testimony the state called Dorothy Thaxton. Thaxton testified that she was presently a neighbor of Nichols in Canton, Georgia, but she had not lived in Canton in 1974. Nevertheless she said that Nichols asked her if she would testify that defendant was at Nichols' home on the night Nichols' husband died. Thaxton said, "I told her I didn't know, I will have to think about it." Finally, Thaxton determined that she would not testify for defendant.[4]

In surrebuttal Nichols testified to "bad blood" between her and Thaxton because of an incident involving Nichols and Thaxton's children.

The state also offered evidence in rebuttal that defendant sometime in August 1974 was observed by Police Officer Grant Crawford committing a traffic violation. Crawford asked defendant for his driver's license and defendant refused to show it to him. Crawford then obtained a warrant charging defendant with exceeding a safe speed and failing to produce his driver's license. The warrant was issued and served by Crawford. Crawford could not recall the date except by reference to a date on a record in the police department. This record, the only record of this transaction available, was a green card maintained by the Murphy Police Department and originally prepared by Nada Pullium, then a secretary for the department. Pullium testified that she prepared the green card from a "white complaint form." The white complaint form was prepared by Pullium from a "yellow complaint form on each arrest" prepared by the officer. The green card, the last record prepared, contained the following notations: "8-21-74," "C," and "warrant pickup." The "C" stood for Officer Crawford. It was not clear from the testimony whether "8-21-74" referred to

---

4. Nichols, both during defendant's case in chief and surrebuttal, denied ever asking Thaxton to testify for defendant.

the date of the officer's action or the date Pullium prepared the green form.[5]

## II.

[1] Having, in essence, this evidence before it, the jury retired for deliberations at 9:55 a.m. At 11:30 a.m. the jury foreman returned alone to the courtroom whereupon the following exchange took place:

> THE COURT: Mr. Foreman, the bailiff indicates that you request access to the transcript?

> FOREMAN: We want to review portions of the testimony.

> THE COURT: I'll have to give you this instruction. There is no transcript at this point. You and the other jurors will have to take your recollection of the evidence as you recall it and as you can agree upon that recollection in your deliberations.

It is this colloquy between the jury foreman and the trial court that forms the basis for defendant's major arguments on appeal. Defendant contends that the trial court erred in failing to exercise its discretion in determining whether the jury could review the evidence and in not having all jurors summoned to the courtroom so that his response could be communicated firsthand to them all rather than to the foreman alone. We think there is merit to this argument.

N.C.G.S. § 15A-1233(a) provides:

> If the jury after retiring for deliberation requests a review of certain testimony or other evidence, *the jurors must be conducted to the courtroom.* The judge *in his discretion,* after notice to the prosecutor and defendant, may direct

---

5. Mrs. Pullium testified that each day she would type from the yellow complaint form "onto a white complaint form. And then I would take a green card that we had set up on each person; and I would put the date and what the arrest was, and the officer and all on the green form." She also said, however, that if the officer brought in his papers early in the morning she usually typed up her forms that day. But if the officer brought in the information "late of the evening or at night, I would type them the next morning." She said that whatever she typed "concerning anything that Mr. Crawford may have deposited with [her] could have very well been typed the next day . . . ."

that requested parts of the testimony be read to the jury and may permit the jury to reexamine in open court the requested materials admitted into evidence. In his discretion the judge may also have the jury review other evidence relating to the same factual issue so as not to give undue prominence to the evidence requested. [Emphasis supplied.]

This statute imposes two duties upon the trial court when it receives a request from the jury to review evidence. First, the court must conduct all jurors to the courtroom. Second, the trial court must exercise its discretion in determining whether to permit requested evidence to be read to or examined by the jury together with other evidence relating to the same factual issue. Insofar as the statute requires the judge to exercise discretion, it is merely a codification of the common law rule. *See, State v. Hough*, 299 N.C. 245, 262 S.E. 2d 268 (1980); *State v. Ford*, 297 N.C. 28, 252 S.E. 2d 717 (1979); *State v. Fulcher*, 294 N.C. 503, 243 S.E. 2d 338 (1978). Insofar as the statute requires the trial court to summon all jurors to the courtroom, it is a codification of a long-standing practice in the trial courts of this state.

In *State v. Lang*, 301 N.C. 508, 272 S.E. 2d 123 (1980), defendant was convicted of kidnapping and assault with intent to commit rape. The victim identified defendant as her assailant. The defense was alibi. Defendant offered the testimony of a waitress that at the time the alleged crime was committed defendant was in a restaurant where the waitress worked. After beginning deliberations, the jury requested that the waitress' testimony be read to it. Denying the request, the trial court said:

No sir, the transcript is not available to the jury. The lady who takes it down, of course, is just another individual like you 12 people. And what she hears may or may not be what you hear, and 12 of you people are expected, through your ability to hear and understand and to recall evidence, to establish what the testimony was.

301 N.C. at 510-511, 272 S.E. 2d at 125. This Court concluded in *Lang* that the response by the trial judge was not an exercise of discretion and that the denial of the jury's request as a matter of law was error. The Court said:

We hold that Judge Grist's comment to the jury that the transcript was *not available* to them was an indication that he did not exercise his discretion to decide whether the transcript should have been available under the facts of this case. The denial of the jury's request as a matter of law was error.

301 N.C. at 511, 272 S.E. 2d at 125.

Here, the question of whether the trial court exercised its discretion in denying the jury foreman's request to review the testimony is controlled by *Lang*. Here, as in *Lang*, the trial judge apparently felt that he could not grant the request because, as he said, "There is no transcript at this point. You and the other jurors will have to take your recollection of the evidence . . . ." This is in substance precisely the response the trial court made in *Lang*.[6] Thus, the trial court erred, as it did in *Lang*, in not exercising its discretion in denying the request.

[2] We think the trial court also erred in not summoning all the jurors into the courtroom to hear both the request and his response to it. N.C.G.S. 15A-1233(a) requires that all jurors "must be conducted to the courtroom" when the jury requests a review of the evidence. While the statute does not expressly say that the trial judge must have the jurors conducted to the courtroom, we have no doubt that the legislature intended to place this responsibility on the judge presiding at the trial. The state argues that the statute requires the jury's presence only when the trial court *grants* the request to review portions of the testimony. When the trial court denies the request, the state argues, there is no possibility of misinterpretation or inaccurate relay of information which the statute is designed to guard against. Defendant contends the statute's purpose is "to prevent confusion in the relaying by one juror to the full jury the instructions of the court, even an instruction denying the request, and to prevent the appearance, at least, of less than a full public trial. A defendant, having the right to a trial by a jury of twelve, has the right to have all twelve jurors instructed consistently."

6. The existence of a transcript is, of course, not a prerequisite to permitting review of testimony. The usual method of reviewing testimony before a transcript has been prepared is to let the court reporter read to the jury his or her notes under the supervision of the trial court and in the presence of all parties.

We agree with defendant's position. The statute requires all jurors to be returned to the courtroom when the jury "requests a review of certain testimony or other evidence." We are satisfied the statute means that all jurors must be present not only when the request is made, but also when the trial court responds to the request, whatever that response might be. Our holding on this point is supported both by the language of the statute and the statute's purpose.

Our jury system is designed to insure that a jury's decision is the result of evidence and argument offered by the contesting parties under the control and guidance of an impartial judge and in accord with the judge's instructions on the law. All these elements of the trial should be viewed and heard simultaneously by all twelve jurors. To allow a jury foreman, another individual juror, or anyone else to communicate privately with the trial court regarding matters material to the case and then to relay the court's response to the full jury is inconsistent with this policy. The danger presented is that the person, even the jury foreman, having alone made the request of the court and heard the court's response firsthand, may through misunderstanding, inadvertent editorialization, or an intentional misrepresentation, inaccurately relay the jury's request or the court's response, or both, to the defendant's detriment. Then, each juror, rather than determining for himself or herself the import of the request and the court's response, must instead rely solely upon their spokesperson's secondhand rendition, however inaccurate it may be.

Thus, we hold that for the trial court in this case to hear the jury foreman's inquiry and to respond to it without first requiring the presence of all jurors was an error in violation of N.C.G.S. § 15A-1233.

III.

Having concluded that the trial court erred in not exercising its discretion in determining whether to permit the jury to review some of the evidence and in hearing the foreman's request and responding to it in the absence of the remaining jurors, we now consider whether these errors entitle defendant to a new trial. We conclude they do.

[1] Just as *State v. Lang*, 301 N.C. 508, 272 S.E. 2d 123, controls on the question of whether the trial court failed to exercise its discretion, it also controls on whether this failure amounts to reversible error. In *Lang*, as here, the only defense was alibi. Indeed, the alibi evidence here is considerably stronger than it was in *Lang* and the state's case against defendant considerably weaker than in *Lang*. In any event, the only contested issue in this case, as in *Lang*, is whether defendant was present and participated in the crime which he stipulated was committed. In *Lang* the court thought it important that the jury had requested a review of the testimony of defendant's alibi witness. In determining that failure to resolve the request as a discretionary matter was reversible error, the Court in *Lang* noted:

> [T]he requested evidence was testimony which, if believed, would have established an alibi for defendant. Ms. James' statements were in direct conflict with the evidence presented by the State. Thus, *whether the jury fully understood the alibi witness' testimony was material to the determination of defendant's guilt or innocence.*

301 N.C. at 511, 272 S.E. 2d at 125 (emphasis supplied).

The jury here did not expressly request a review of the testimony of defendant's alibi witness. Indeed, the jury foreman was not given an opportunity to specify which part of the testimony the jury wanted to review. The heart of this case, however, is the testimony concerning defendant's alibi, both that offered by defendant tending to support it and that offered by the state tending to rebut it. Neither the state's nor the defendant's evidence on the question of alibi stood unscathed at this trial. Both had its strengths and its weaknesses. The testimony of defendant's alibi witnesses had on its face the ring of truth, but Donna Nichols' credibility was called into question by the state's rebuttal witness, Dorothy Thaxton. Yet Thaxton's own credibility was questioned because of evidence of "bad blood" between her and Nichols. The state's evidence regarding the issuance of a warrant against defendant for a traffic violation in August 1974 was marred by the absence of any original record of the transaction and the cryptic nature and lack of clarity as to the meaning of the notations on the secondary record. With the alibi evidence in such a state and with alibi being the only contested issue in the case, it

is only reasonable to conclude that the jury desired to review evidence relating to it. We cannot say how the jury would have assessed the evidence had it been permitted to review it. It could have been influenced by the strengths of defendant's evidence and the weaknesses of the state's. But we can say as the Court said in *Lang* that whether the jury fully understood and appreciated the evidence on the alibi question "was material to the determination of defendant's guilt or innocence. Defendant was at least entitled to have the jury's request resolved as a discretionary matter, and it was prejudicial error for the trial judge to refuse to do so." 301 N.C. at 511, 272 S.E. 2d at 125.

[2]  We conclude it was also prejudicial error for the trial court not to require that all jurors hear the foreman's inquiry and the court's response to it.

The state contends that no prejudice resulted to defendant because the jury foreman merely asked the judge for a review of testimony to which the judge responded in the negative. The state concedes that defendant would be entitled to a new trial if the judge had given further instructions or reviewed the testimony for a single juror. The state says the only message the foreman had to relay to his fellow jurors in this case was "No." Thus, there was little opportunity for inaccuracy in relaying or editorializing this simple message. We disagree.

The state's argument is premised upon facts not here present. First, as we have already said, all jurors should be present to hear the request itself, for it is only in light of the request, the manner and precision with which it is put, that the court's response can be accurately assessed and properly understood. Second, the trial court's response was not a simple "no" as the state contends. Rather, the court explained that it could not grant the foreman's request because no transcript existed, and that the jurors would have to rely upon their recollection of the evidence as best they could. Although the foreman might have relayed this exact message, he might as easily have conveyed some altered message or phrased the judge's response in his own words in such a way as to alter its connotation and its import. The manner in which he reported his request and the response might have led the other jurors to believe the trial court thought the evidence

which the jury wanted reviewed unimportant or not worthy of further consideration.

[3]   Finally, the state argues that even if the trial court committed reversible error by refusing the jury's request as a matter of law and by responding to the jury foreman alone, defendant has waived the right to appeal on this issue by his failure to object at trial.

As a general rule, defendant's failure to object to alleged errors by the trial court operates to preclude raising the error on appeal. *See*, N.C. R. App. P. 10(a); *State v. Reynolds*, 307 N.C. 184, 297 S.E. 2d 532 (1982); *State v. Cooke*, 306 N.C. 132, 291 S.E. 2d 618 (1982); *State v. Brock*, 305 N.C. 532, 290 S.E. 2d 566 (1982); *State v. Lucas*, 302 N.C. 342, 275 S.E. 2d 433 (1981).

Where, however, the error violates defendant's right to a trial by a jury of twelve, defendant's failure to object is not fatal to his right to raise the question on appeal. *Bindyke*, 288 N.C. 608, 222 S.E. 2d 521; *Hudson*, 280 N.C. 74, 185 S.E. 2d 189.

Further, when a trial court acts contrary to a statutory mandate and a defendant is prejudiced thereby, the right to appeal the court's action is preserved, notwithstanding defendant's failure to object at trial. In *State v. Bryant*, 189 N.C. 112, 126 S.E. 107 (1925), this Court awarded defendant a new trial based upon the trial court's comment in the presence of the jury that defendant had the weakest voice or the shortest memory of any man he had ever seen. The Court held that these comments reflected an opinion of the trial court regarding the defendant's credibility in violation of the controlling statute which prohibited the expression of such opinions by the trial judge.[7] As such, defendant's failure to object at trial to the court's remarks was not fatal to his appeal. The court held:

> The fact that exception was not entered at the time the remark was uttered is immaterial. The statute is mandatory, and all expressions of opinion by the judge during the trial, in like manner with the admission of evidence made incompetent by statute, may be excepted to after the verdict. *Broom v. Broom*, 130 N.C. 562.

---

7. The statute cited was G.S. 564. The same prohibition against expression of opinion by the trial court is now contained in present N.C.G.S. § 15A-1232.

*Id.* at 115, 126 S.E. at 109. *See also State v. Perry*, 231 N.C. 467, 57 S.E. 2d 774 (1950); *State v. Covington*, 48 N.C. App. 209, 268 S.E. 2d 231 (1980).

Similarly, we have held that although failure to object to introduction of evidence ordinarily waives the right to complain about it on appeal, where the particular evidence sought to be offered is specifically rendered incompetent by statute it is the duty of the trial court to exclude it *sua sponte*. Its failure to do so may on appeal be held reversible error notwithstanding defendant's failure to object at trial. *State v. McCall*, 289 N.C. 570, 223 S.E. 2d 334 (1976). For general statements of the rule, see *State v. Hunter*, 297 N.C. 272, 254 S.E. 2d 521 (1979); *State v. Thompson*, 290 N.C. 431, 226 S.E. 2d 487 (1976); *State v. Strickland*, 290 N.C. 169, 225 S.E. 2d 531 (1976).

Both Art. I, § 24 of the North Carolina Constitution and N.C.G.S. § 15A-1233(a) require the trial court to summon all jurors into the courtroom before hearing and addressing a jury request to review testimony and to exercise its discretion in denying or granting the request. Under the principles stated above, failure of the trial court to comply with these statutory mandates entitles defendant to press these points on appeal, notwithstanding a failure to object at trial.

For the reasons given, defendant is entitled to a

New trial.

Justice VAUGHN did not participate in the consideration or decision of this case.

Justice MARTIN dissenting.

The majority opinion grants this defendant a new trial based upon the following: (1) N.C.G.S. 15A-1233(a) requires the trial judge to exercise his discretion in deciding whether to grant a juror's request pursuant to this statute, in this case the trial judge failed to exercise his discretion, and this failure was prejudicial error; (2) N.C.G.S. 15A-1233(a) expressly mandates that the trial judge summon all jurors into the courtroom before hearing and passing upon a jury request pursuant to this statute.

## I.

It is unquestioned that the defendant in this case failed to object to the action of the trial judge with respect to the request by the jury foreman. As the majority states, as a general rule a defendant's failure to object to alleged errors precludes raising the error on appeal. N.C. R. App. P. 10(a); *State v. Reynolds,* 307 N.C. 184, 297 S.E. 2d 532 (1982) (Exum, J.). The majority reasons that the trial court in this instance was acting contrary to a statutory mandate and therefore the defendant can raise the issue on appeal notwithstanding his failure to object at trial. The majority argues that where the trial judge is by statute expressly required to do or not to do a certain thing and violates the statute, this error can be reviewed, even though the defendant did not object at trial. I have no quarrel with this statement of the law. This principle is properly applied in a case such as *State v. Bryant,* 189 N.C. 112, 126 S.E. 107 (1925), cited by the majority. In that case the trial judge violated the statute which prohibits the trial judge from expressing an opinion as to whether a fact had been proven. The statute is now N.C.G.S. 15A-1232. It was formerly N.C.G.S. 1-180. This statute clearly says that "[the trial judge] must not express an opinion whether a fact has been proved."

Where is the statutory mandate in N.C.G.S. 15A-1233(a)? Contrary to the majority opinion, the statute does not expressly require the trial judge to conduct the jury to the courtroom. The statute simply says that "the jurors must be conducted to the courtroom." Of course, the judge is in charge of the proceedings during the trial and it can be argued that it was the ultimate responsibility of the trial judge to see that the jury was brought into the courtroom. However, that is a far cry from an express mandate such as that contained in N.C.G.S. 15A-1232. The remainder of 15A-1233(a) is not couched in mandatory language, but says that the judge "may" allow the testimony to be read and the judge "may" have additional evidence read to the jury. No direct mandate is made to the judge at any point in the statute. For this reason, I do not find that a transgression of this statute comes within the holding in *Bryant,* 189 N.C. 112, 126 S.E. 107.

It is to be noted that N.C.G.S. 15A-1446(d) does not list this type of error as grounds which may be asserted on appeal without objection having been made in the trial court. Clearly the de-

fendant in this case had ample opportunity to object to the action of the trial court, and he cannot, and evidently does not, argue that he should be allowed to urge this alleged error on appeal pursuant to N.C.G.S. 15A-1446(d)(12).

For these reasons, I think that the majority is wrong in holding that this Court should consider the alleged error of the trial judge in this case notwithstanding the fact that no objection was made by the defendant during the trial. Had such an objection been lodged, the trial court would have had an opportunity to correct any possible error.

## II.

I agree that N.C.G.S. 15A-1233(a) requires the trial judge to exercise his discretion in determining whether to allow the jury to review a portion of the testimony. I also agree that under *State v. Lang,* 301 N.C. 508, 272 S.E. 2d 123 (1980), the trial judge failed to exercise that discretion. Having done so, it is then necessary to determine whether such error was prejudicial. *State v. Ford,* 297 N.C. 28, 252 S.E. 2d 717 (1979). I disagree with the majority in its holding that such failure constituted prejudicial or reversible error. In finding that the failure of the judge to exercise his discretion constituted prejudicial error, the majority relies, again, upon *Lang.* In *Lang* the defendant had produced evidence through Ms. Rena James, a waitress at a restaurant, that he was at the restaurant between 9:00 and 10:00 p.m. and, therefore, he could not have been the man who kidnapped the victim between 9:20 and 9:30 p.m. After the jury had deliberated for some time, it returned to the courtroom and requested that the transcript of the testimony of the witness Rena James be read to the jury. The trial judge denied the request, and this Court held that he did so without exercising his discretion. Upon reviewing the case to determine if the error was prejudicial, this Court found that the requested evidence would have established an alibi for the defendant if believed by the jury; further, that the evidence was in direct conflict with the state's evidence; and that the question of whether the jury fully understood Ms. James's testimony was material to a determination of defendant's guilt or innocence and that the jury had requested this specific evidence. Therefore, this Court held that the failure of the trial court to exercise its discretion was prejudicial.

Contrary to *Lang*, in this case, as the majority points out, we do not know what motivated the foreman of the jury to request "we want to review portions of the testimony." The writer of the majority opinion finds that the defendant relied upon alibi, as the defendant did in *Lang*, and therefore concludes that the foreman must have wanted to hear the testimony concerning the defendant's alibi. This conclusion is sheer speculation. There is nothing in the record in this case which indicates in any fashion what testimony the jury wanted to review. Simply because alibi was one of the factors in the case is no reason to presume that the jury wanted to review that portion of the testimony. The principal witness against the defendant was Ted Killian, who testified for the state pursuant to a plea arrangement. The jury, just as logically, could have wanted to review the testimony of Killian, because his testimony was indeed suspect. The statute under which he testified requires the jury to scan and scrutinize his testimony with care before they accept it. N.C. Gen. Stat. § 15A-1052(c) (1983). The witnesses Robert Bryson and Kathy Gunter had made statements implicating three other persons, including Killian, in the murder of Odom, but had not implicated the defendant. Therefore, the state's entire case turned on the evidence of Killian insofar as implicating the defendant as one of the perpetrators. Also, the jurors might well have wanted to review the testimony of Bryson and Gunter concerning their statements implicating all of the persons except this defendant as being the perpetrators of the murder. So, it appears to me that although the majority strains mightily to support its quantum leap that the jury wanted to hear the alibi testimony, it has failed to do so.

As there is no reasonable way to conclude what part of the transcript the jury wanted to review, there is no reasonable manner in which it can be determined that the defendant was prejudiced by the court's denial of the request without exercising its discretion. It must be remembered that the alleged error is not the court's denial of the jury's request but is, rather, that the court denied the request without exercising its discretion. *See State v. Dover*, 308 N.C. 372, 302 S.E. 2d 232 (1983). There has been no showing made in a reasonable manner that by the court's failure to exercise its discretion in denying the request a different result would have been reached at the trial. N.C. Gen. Stat. § 15A-1443(a) (1983). Stated differently, can this Court say as a

matter of law that had the judge denied the request in the exercise of his discretion, a reasonable possibility exists that a different result would have been reached at the trial? I think not.

Furthermore, the majority overlooks the statutory rules for determining prejudice as expressed in N.C.G.S. 15A-1443(a):

> (a) A defendant is prejudiced by errors relating to rights arising other than under the Constitution of the United States when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises. The burden of showing such prejudice under this subsection is upon the defendant. Prejudice also exists in any instance in which it is deemed to exist as a matter of law or error is deemed reversible per se.

15A-1443(a) establishes the test for determining prejudice arising from all errors (including state constitutional errors) except errors under the Constitution of the United States, which are governed by N.C.G.S. 15A-1443(b). Under this test defendant has failed to demonstrate prejudice.

Defendant received a fair trial, without prejudicial error.

Chief Justice BRANCH joins in this dissenting opinion.