STATE OF NORTH CAROLINA
v.
VARSIE EPPS
No. COA07-1234
North Carolina Court of Appeals
Filed June 3, 2008
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General LaToya B. Powell, for the State.
Peter Wood for Defendant.
McGEE, Judge.
The State's evidence at trial tended to show that Carolyn Epps (Ms. Epps) and Varsie Epps (Defendant) had been married for thirty-seven years. Ms. Epps previously had obtained a domestic violence protection order against Defendant.
Ms. Epps testified that on the afternoon of 23 January 2005, she left her house to purchase pet food. When Ms. Epps returned home, she entered her house and attempted to close her door. As she attempted to close the door, Defendant appeared and forcefully entered the house. Ms. Epps testified that Defendant hit her on the forehead with his fist, and then "slammed me against the floor by hitting me." Defendant also placed his hands around Ms. Epps' neck. After Defendant left, Ms. Epps contacted the police. Defendant also testified at trial. According to Defendant, he purchased some groceries for Ms. Epps on the morning of 23 January 2005 and left the groceries on her property. Defendant then went to a friend's house to help assemble an exercise bicycle and remained there until late afternoon. Defendant then went to visit his son. Defendant denied the assault, and denied that he saw Ms. Epps on 23 January 2005.
A jury found Defendant guilty on 7 June 2007 of one count of violating a domestic violence protective order, one count of assault on a female, and one count of breaking or entering. The trial court sentenced Defendant to a term of seventy-five days in prison on the charge of violating a domestic violence protective order, and to a consecutive term of seventy-five days in prison on the charges of assault on a female and breaking or entering. Defendant appeals.

I.
Defendant first argues that the trial court erred by failing to appoint an interpreter for him at trial due to Defendant's hearing disability. Under N.C. Gen. Stat. § 8B-2(a) (2007):
When a deaf person is a party to or a witness in any civil or criminal proceeding in any superior or district court of the State . . . the court shall appoint a qualified interpreter to interpret the proceedings to the deaf person and to interpret the deaf person's testimony, if any.
Defendant did not request an interpreter at trial, nor did he object to the trial court's failure to appoint an interpreter. Nonetheless, our Courts have held that "when a trial court actscontrary to a statutory mandate and a defendant is prejudiced thereby, the right to appeal the court's action is preserved, notwithstanding [the] defendant's failure to object at trial." State v. Ashe, 314 N.C. 28, 39, 331 S.E.2d 652, 659 (1985).
N.C. Gen. Stat. § 8B-1(2) (2007) defines a "deaf person" as "a person whose hearing impairment is so significant that the individual is impaired in processing linguistic information through hearing, with or without amplification." To demonstrate that Defendant falls within this definition, Defendant points to various portions of the trial transcript where Defendant did not hear a question and asked for it to be restated. For example, during the State's cross-examination of Defendant, the following exchange occurred between Defendant and Assistant District Attorney Allan Adams (Mr. Adams):
MR. ADAMS: Mr. Epps, you say you left the groceries there early that morning, right?
DEFENDANT: Say what? Now speak up. I'm hard of hearing. If you will speak up, please.
MR. ADAMS: Okay. You said you left the groceries there early in the morning?
DEFENDANT: Right.
Defendant argues that because of his obvious difficulty in hearing the trial proceedings, he was de facto absent from his own trial.
We disagree with Defendant's contentions. A full review of the trial transcript demonstrates that Defendant was sufficiently able to hear and understand the trial proceedings. On direct examination, counsel for Defendant asked Defendant thirty-one different questions. Six times, Defendant asked his attorney torepeat a question. In each instance, after Defendant's attorney repeated the question in a louder voice, Defendant was able to answer the question in full. In addition, during direct examination, the trial court asked Defendant two questions, and Defendant was able to hear and respond to those questions. On cross-examination, Mr. Adams asked Defendant twelve questions. Defendant asked Mr. Adams to repeat himself once. Mr. Adams then repeated the question in a louder voice, and Defendant was able to answer the question. While Defendant did state on cross-examination that he was partially unable to hear the testimony of an earlier witness, Defendant also acknowledged multiple times on both direct and cross-examination that he recalled hearing specific portions of earlier testimony.
The transcript reveals that Defendant was able to process linguistic information when the trial participants amplified their voices. Therefore, Defendant does not come within the definition of "deaf person" set out in N.C.G.S. § 8B-1(2), and the trial court was not required to appoint an interpreter for Defendant under N.C.G.S. § 8B-2(a). While the trial court had the discretion to appoint an interpreter in this situation, see State v. McLellan, 56 N.C. App. 101, 102, 286 S.E.2d 873, 874 (1982), Defendant has failed to show the trial court abused its discretion by failing to appoint an interpreter, especially given that Defendant did not request an interpreter at trial. See N.C. Gen. Stat. § 8B-4 (2007) (while a deaf person does not waive the right to an interpreter by failing to request one, the deaf person nonetheless shall notifythe appropriate authorities of his or her needs prior to the deaf person's trial appearance). Defendant's assignments of error are overruled.

II.
Defendant next argues that he received ineffective assistance of counsel at trial. To succeed on an ineffective assistance of counsel claim,
[f]irst, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
Strickland v. Washington, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, reh'g denied, 467 U.S. 1267, 82 L. Ed. 2d 864 (1984). See State v. Braswell, 312 N.C. 553, 562-63, 324 S.E.2d 241, 248 (1985).
Defendant argues that his trial counsel was ineffective because his counsel should have known that Defendant was hard of hearing and counsel should have requested an interpreter. We disagree. As noted above, the record demonstrates that Defendant did not meet the statutory definition of a "deaf person." Therefore, even if Defendant's counsel had requested an interpreter, the trial court had the discretion to deny this request. The record further demonstrates that Defendant was able to hear and understand the trial proceedings without an interpreter. Defendant's counsel therefore was not "deficient"under Strickland. Even assuming arguendo that Defendant's counsel was deficient, Defendant has merely alleged that his "rights at trial were compromised," and that he "was prejudiced by this miscarriage of justice." Defendant has not explained specifically how he was prejudiced, or how such error rendered the jury verdict unreliable. Defendant therefore has not met his burden under Strickland. Defendant's assignments of error are overruled.
No error.
Judges TYSON and STEPHENS concur.
Report per Rule 30(e).